New trial to be granted.

---

THE NEW-YORK FIREMEN INSURANCE COMPANY *against* BENNETT and others.

Though the indorsement of a note, by one of several partners, in the partnership name, for his individual purposes, without the consent or knowledge of the other partners, will, after the security has passed into the hands of a *bona fide* holder, bind the firm; yet an indorser, who, at the time of receiving such security, did not know, but was ignorant through gross negligence, that it was indorsed under such circumstances, cannot avail himself of it to subject the firm.

The indorsement of a note, by one of several partners, in the partnership name, as surety for a third person, without the consent or knowledge of the other partners, will not bind the firm; and the burden of proving the authority of the partner so using the partnership name, lies on the creditor or holder of the note.

Therefore, where *A.*, *B.* and *C.* were partners, doing business in the city of *New-York*, where *A.* resided, and in *Fredericksburgh* in *Virginia*, where *B.*

and *C.* resided ; and *A.* indorsed a note in *New-York*, in the partnership name, without the consent or knowledge of *B.* and *C.*, as the mere surety of *D.*, a third person, for a debt previously due from *D.* to the indorsee, the partnership having no interest in the transaction ; in an action by the indorsee, against all the partners as indorsers, it was held, that the plaintiff could not recover, although the jury should find, that he had no knowledge, express or implied, of *A.*'s want of authority.

[As to corporate powers generally, and the right of the plaintiffs to loan money on the discount of notes, see the summary of the preceding case.]

This was an action against *Thaddeus W. Bennett, Lathrop L. Sturges* and *Ebenezer P. Cady*, merchants in company, under the firm of *Bennett, Cady & Co.*, as indorsers of a promissory note made by *Sturges & Sherman*.

The cause was tried, on the general issue, at *Fairfield, December* term, 1822, before *Chapman*, J.

The plaintiffs gave in evidence the charter of the company ; and the defendants, the laws of the state of *New-York* in relation thereto. (a) The plaintiffs kept an office in the city of *New-York*, for the purpose of transacting their business as an insurance company ; at which the note in question, had been discounted, by the plaintiffs, in payment of two other notes then due to them, by *Sturges & Sherman*, which were given for other notes that originated from loans of money made by the plaintiffs to them. When the note in question was discounted, there was deducted therefrom interest, at the rate of seven *per cent. per annum*, the lawful interest of the state of *New-York*, from the date of the note to the time specified for the payment, with the usual days of grace ; and in computing such interest, 30 days were reckoned as one month, and 360 days as one year ; such being the mode of computing interest practised by all the banks, and by the merchants, in the city of *New-York*. The defendants insisted, that the plaintiffs could not recover, because by the charter of the company, and the laws of the state of *New-York*, the plaintiffs had no right to loan money, and receive the note in question ; and because by the laws of that state, such note was usurious ; and the defendants prayed the judge so to instruct the jury. On both these points the charge of the judge was adverse to the claim of the defendants,

It appeared in the progress of the trial, that the note in question was indorsed, by *Bennett's* signing the copartnership name

(a) For a particular statement of these, see the preceding case of *The New-York Firemen Insurance Company* v. *Ely* and *Parsons*.

*Fairfield,*
June,
1825.

N. Y. F. In. Co.
*v.*
Bennett.

of *Bennett, Cady & Co.* This company did business at *Fredericksburgh* in *Virginia,* where *Sturges* and *Cady* resided, and in the city of *New-York,* where *Bennett* resided. There was no proof that either *Sturges* or *Cady* was in *New-York,* when the note was indorsed, or had any knowledge thereof. The defendants had no interest in the note; it being a renewal note, made and indorsed to secure the payment of a debt previously due from *Sturges & Sherman* to the plaintiffs, for money loaned. Upon these facts, the defendants prayed the judge to instruct the jury, that the plaintiffs could not recover, on the ground that the indorsement was not legally binding on either *Sturges* or *Cady.* On this point, the judge instructed the jury, that one partner has an implied authority to bind the firm in all contracts relating to its concerns; also in contracts not relating to the concerns of the firm, if the person with whom the contract is made, had neither express nor implied knowledge that such partner had no such authority.

The plaintiffs obtained a verdict; and the defendants moved for a new trial.

*Daggett* and *Sherman,* in support of the motion, contended, 1. That the plaintiffs had not the power of loaning money on the discount of notes.

2. That the note in suit was usurious.

3. That the indorsement did not bind the firm. The charge asserts the doctrine, that one partner may bind the firm in all cases, unless the other partners can shew, not only that the partner using the name of the firm had no authority, but that the person taking the paper *knew* that he had no authority. This is going much too far. In relation to the concerns of the partnership, one partner may bind the firm; but in relation to matters aside from the regular business of the partnership, and in which the partnership has no interest, it is not generally true, that one partner may bind the firm. It would be more correct to say, in such case, that the firm is never bound, except where the other partners, by their words or conduct, have given an express or implied sanction. Ex parte *Bonbonus,* 8 *Ves.* jun. 580. Within the limits of the partnership business, each partner is the general agent of the firm; but without those limits, he is only a special agent; and persons dealing with him are not to infer any authority beyond what was given; and if such special agent exceeded his authority, his principals are not bound. *Fenn* & al v. *Harrison* & al. 7 *Term Rep.* 757. 760.

*Gibson* v. *Colt* & al. 7 *Johns. Rep.* 390. 393, 4. *Munn* v. *The Commission Company*, 15 *Johns. Rep.* 44. In this case, the indorsement in question had no relation to the business of the partnership ; the partnership had no interest in the transaction, and could derive no benefit from it ; there was no privity of the other partners ; nor was there any connivance on their part, or course of conduct evincing assent. Under these circumstances, though the plaintiffs had no knowledge of *Bennett's* want of authority, they must be considered as taking the security at the peril of proving his authority ; the mere relation of partners not being of itself sufficient to confer it.

*N. Smith* and *Bissell*, contra, insisted, 1. That the plaintiffs were authorized by their charter, and were not prohibited by the laws of *New-York*, to take the note in question.

2. That the note was not usurious, either because the interest was taken by way of discount, or on account of the mode of computing time.

3. That the indorsement was obligatory upon the firm. The jury, under the charge given by the judge, have found, that the plaintiffs had no knowledge, express or implied, of *Bennett's* want of authority to give the name of the firm. *Prima facie*, the indorsement of a bill or note, by one partner, in the name of the partnership, binds all the partners. *Wells* v. *Masterman*, 2 *Esp. Rep.* 731. *Swan* v. *Steele*, 7 *East*, 210. *Ridley* v. *Taylor*, 13 *East*, 175. The relation itself creates a presumption of authority. This presumption may be repelled, by collusion between the creditor and the partner using the name of the firm, or by the creditor's knowledge of such partner's want of authority ; and the creditor's knowledge may, perhaps, be shewn, from his *means* of knowledge. But in this case, there was no claim of actual collusion ; and the fact of knowledge, in whatever way it might be proved, was distinctly submitted to the jury, and passed upon, by them. There is, then, nothing in the case, to repel the general presumption. Is the *bona fide* holder of a partnership security bound to go to all the members of the firm, and enquire of each, whether he authorized the act ? Must the directors of a bank institute this enquiry, before they can safely discount a note with a partnership name upon it ? If the bank, in any action on such note, can prove the existence of the partnership, and the hand-writing of one of the partners, may they not there rest their case, until the defendants can shew some fraud, collusion or knowledge of want

of authority, on the part of the plaintiffs ? If not, it is a doctrine as alarming as it is new, not only to banks, but to all receivers of partnership securities ; and let this doctrine be established and generally understood, and it would put an end, in most cases, to credit from the partnership name. Partners themselves would lose the advantage, which it was the object of their association to secure.

The circumstance that the indorsement in question was made as a guaranty of the debt of a third person, does not conclusively shew, that it was improper for the plaintiffs to take it ; nor does it exempt the case from the general rule as to the liability of partners. If it afforded *any evidence,* that the plaintiffs *knew of Bennett's* want of authority, the defendants had the benefit of that evidence with the jury. Besides, partnerships, as well as individuals, frequently indorse for each other; and it is as necessary that each partner should have power to bind the firm for this purpose, as to do any other act. Will not the law sanction these acts of mutual accommodation? Is it incumbent on the holder of paper so indorsed, to shew, not only the existence of the partnership and the hand-writing of the partner using the partnership name, but also that such partner was specially authorized, by each of the other partners, to make the indorsement ?

HOSMER, Ch. J. The opinion expressed by the Court, in the preceding case of *The New-York Firemen Insurance Company* v. *Ely* and *Parsons,* is equally applicable to this case ; and, on the ground of a loan on discount of the note in question, which the plaintiffs had no authority to make, the determination of the judge at the circuit was erroneous, and a new trial must be granted.

The case, however, presents another question of great practical importance, which, in my opinion, was incorrectly decided.

The note in suit was indorsed by *Thaddeus W. Bennett,* by signing the copartnership firm of *Bennett, Cady & Co.,* which consisted of the said *Bennett, Lathrop L. Sturges* and *Ebenezer P. Cady.* This company did business as merchants in *Virginia,* where *Sturges & Cady* resided, and in *New-York,* which was the residence of *Bennett.* The note in question was made for the debt of *Sturges & Sherman ;* and there was no proof that *Sturges* or *Cady* had any knowledge of the indorsement of it, or gave any authority for this purpose.

The judge charged the jury, that one partner has an implied

*Fairfield,*
June
1825.,

N. Y. F. In. Co.
*v.*
Bennett.

authority to bind the firm in all contracts relating to its concerns, and to contracts not relating to the concerns of the firm, if the person with whom the contract is made, had neither express nor implied knowledge, that there was no such authority. To this principle, hostile as it is to established law, I cannot subscribe.

A joint-tenant, or person jointly interested with another, in real or personal property, is not legally authorized to do any act, which tends to his prejudice. 1 *Lev.* 234. 2 *Co. Rep.* 67. *Bac. Abr. tit.* Joint-tenant &c. H. 3.

By long established law, however, originating in the custom of merchants, a contract by one partner, having the appearance of being in behalf of the firm, is considered as being obligatory on the partnership. Whenever a bill is drawn, accepted or indorsed, by one of the several partners, during the partnership existence, and in behalf of the firm, and it gets into the hands of a *bona fide* holder, the partners are liable, though in truth the partner negotiated the bill without the consent of the partners, and for his own peculiar benefit. But, in respect of a person, who, at the time of receiving the bill, knew, or had reason to believe, that the partner negotiated it for his individual advantage, and without the concurrence of his associates, the bill is entirely unavailable.

The principles are obvious, and founded in general convenience. A partner, strictly speaking, has an implied authority, by virtue of the partnership connexion, to perform acts and make contracts, only within the limits of the partnership covenant. But, as persons dealing with him cannot always know when he is acting within the sphere allotted him, and when for his own use, those who are not guilty of gross negligence, and act *bona fide*, are protected in their contracts, whatever may be the concealed obliquity of his conduct. Hence, if he raise money on a bill or note, signed or indorsed in the name of the firm, the partnership is bound, although he performed the act with a view to his own individual use. On the same principle, if the person receiving the bill had knowledge that he was violating his duty to his partners; yet if the bill came *bona fide* into the hands of a purchaser, he acquires a right to subject the partnership. Public convenience demands the establishment of these principles. If a secret fraud of the nature above-mentioned were to vitiate a note or bill, it would demand enquiries, which could not often be made or satisfied, before either of them could safely be received, and thus would operate as a

pernicious impediment to their free circulation. But neither justice nor convenience requires, that the person who has knowledge of the fraud, or is ignorant through gross negligence, should have right to subject a partnership, by the contract of one of the partners, made for his own benefit. If, therefore, at the time he received the instrument from one of the partners, he knew, or had reason to believe, that it was in payment of the partner's debt, or for his own peculiar advantage, aside of the partnership benefit, he acquires no right, by this attempted prostitution of the firm.

These principles are firmly and universally established on every page of the law merchant in relation to this subject.

It is now insisted, that the payee of a promissory note, although he has knowledge that the maker or indorser in the name of the firm, is making payment, by this act, of his own debt, or is becoming the surety of another person, without the concurrence of his partners; and that neither the partnership covenant nor the interest of the partnership sanctions the act; yet that he has a right to subject the partnership. This principle, in direct hostility with justice and convenience, is endeavoured to be sustained, by the unwarranted supposition, that the payee, not having knowledge that special authority was not given the partner, may fold his arms, and reap a benefit from his supineness. Common sense and common integrity require, that he should make enquiry, in such case, and actually know, that authority was given. He is bound, on legal and fair principles, to sustain the affirmative. He knows, that the partnership is for mercantile operations. He knows, that the partner, signing or indorsing a note in the name of the firm, from the partnership contract had no implied authority. He knows, that the act can alone be authorized, by the delegation of express power. And he knows, that on the most common and best established principles, in promotion of justice and prevention of fraud, the person claiming the obligation of contract against a partnership, is bound to prove it.

The principles on this subject are well established, and repel the plaintiff's claim. If the law were such as has been contended for, and as was delivered to the jury, by the judge at the circuit, it would superadd to the great, although necessary hardships now attending partnership contracts, a burden and discouragement, that would greatly impair, if not destroy this most useful connexion.

In the case of *Arden* v. *Sharp & Gilson, 2 Esp. Rep. 524.* it

*Fairfield.*
June,
1825.

N. Y. F. In. Co.
*v.*
Bennett.

was decided, by Lord *Kenyon*, that where one partner puts the name of the firm to a bill of exchange, but the party at whose request it is done, *knows that it is not on the partnership account, nor for their benefit*, but it is the act of the partner only, he cannot sue the firm on that bill. But if one partner indorse the name of the firm on a bill of exchange, and *it goes into the world*, and gets into the hands of a *bona fide* holder, who takes it on the credit of the partnership name, and *is ignorant of the circumstances*, though in fact the bill was first discounted for that one partner's use, in such case the partnership is liable.

By the same judge, in *Wells* v. *Masterman*, 2 *Esp. Rep.* 731. the same point was similarly determined; and the following observation was made : "If a man who has dealings with one partner only, draws a bill on the partnership on account of those dealings, he is *guilty of a fraud*; and in *his* hands, the acceptance by that partner, would be void."

These determinations were succeeded by the case of *Shirreff & al.* v. *Wilks*, 1 *East* 48. Two of three partners, it was decided, who had contracted a debt prior to the admission of the third partner into the firm, cannot bind him without his assent, by accepting a bill drawn by the creditor upon the firm in their joint names; but such security is fraudulent and void as against the third partner, and cannot be recovered on, in an action against the three. "It is hard enough," said Lord *Kenyon*, "for one partner, in any case, to be able to bind another, without his knowledge or consent; but it would be carrying the liability of partners for each other's acts to a most unjust extent, if we suffered a new partner to be bound, in this manner, for an old debt, incurred by other persons. The plaintiffs, therefore, ought not, in justice, to have taken this security, by which they were to bind one, who was not their debtor : *the transaction is fraudulent upon the face of it.*" The same principle is recognized in many cases; nor is there a decision or *dictum*, within my knowledge, contravening the principles before expressed. *Ridley & al.* v. *Taylor*, 13 *East* 175. 180. *Green* v. *Deakin & al.* 2 *Stark. Rep.* 347. Ex parte *Bonbonus*, 8 *Ves.* jun. 542, 3. *Williams* v. *Thomas & al.* 6 *Esp. Rep.* 18. *Emly & al.* v. *Lye & al.* 15 *East* 11, 12. Ex parte *Gardin*, 15 *Ves.* jun. 186. In the state of *New-York*, the decisions on the subject in question, are numerous. The cases of *Livingston* v. *Hastie* and *Patrick*, and of the same person against *Tyrie*, 2 *Caines* 246 fully support the principle I have advanced. It was determined, that a note, given in the name of a firm, for the pri-

*Fairfield,*
June,
1825.

N. Y. F. In. Co.
*v.*
Bennett.

vate debt of one partner, without the knowledge or consent of his copartner, is void in the hands of the creditor, as against the firm. When delivering the opinion of the court, it was said, by *Livingston, J.*—" It is certain, that the power of one partner to bind the other, is very great ; and for the purpose of trade, it should be so. When there is a known partnership, it is right that any one dealing with either of the partners, as such, should have recourse to all of them for his contracts ; and if he abuse the confidence, which his associates repose in him, strangers should not suffer. But it is not necessary for trade, that this authority over each other, should extend to matters totally unconnected with the objects of their association, and which it is impossible any articles of partneship could have contemplated. Were that the case, it would put an end to these connexions altogether. It can never be the intention of those who form companies of this nature, nor can it be the expectation of the world, that every partner is to pledge the general responsibility for his private debts, contracted before or after the partnership. When any one, therefore, takes a partnership note from one of the company, for what he knows to be his particular debt, *without consulting or apprising the other members of his intention, or obtaining their consent,* there is no hardship in confining his remedy to the one whose debt it was. This rule we adopt, as one that will produce the least mischief; will prevent an improper use of the partnership firm; will confine persons, thus associated, within proper bounds; and will destroy every inducement in strangers to obtain, by practice or fraud, a security against the whole company for the individual debt of any member. The plaintiff here knew the note was given for *Hastie's* own debt ; and it does not appear, that *Patrick* consented to his name being used. The defendants, therefore, must have judgment."

To this case succeeded *Livingston* v. *Roosevelt,* 4 *Johns. Rep.* 251. deciding, that where there is a special or limited partnership, in any particular trade or business, one partner cannot bind his copartner, by any contract not connected with such trade or business. "It has been repeatedly ruled," said *Van Ness, J.,* " that whenever a partner pledges the partnership funds or credit, in a transaction, which is known to be unconnected with, and not fairly and reasonably within, the compass of the partnership, it is, as to the other partners, fraudulent and void." The other judges, in substance, expressed the same

opinion. To the same effect are the determinations in *Lansing* v. *Gaine* and *Ten Eyck*, 2 *Johns. Rep.* 300. and *Dob* v. *Halsey*, 16 *Johns. Rep.* 34.

The cases hitherto cited directly prove, that the taking from one partner a bill or note, drawn or indorsed in the partnership name, for the debt of the partner thus drawing or indorsing, and without the consent or connivance of his copartners, is a fraud; and that the contract, as to them, is void. But the principle implied invalidates every contract of a partner with another person, not within the sphere of the common connexion, unless it be with the assent or for the benefit of the partnership.

There are, however, determinations precisely applicable to the present case. In *Hope* v. *Cust*, cited from a manuscript note of *Buller*, J. 1 *East* 53. it appears, that *Fordyce*, who traded very largely in his separate capacity, as well as in the business of a banker in partnership with others, having considerable dealings, in his *private* capacity, with *Hope & Co.* of *Holland*, gave them, and in the names of himself and partners, a general guaranty for the money due from him separately. A bill was filed by *Hope & Co.* in chancery, to have the benefit of the guaranty, on which an issue was directed; and in summing up the evidence to the jury, Lord *Mansfield* said, that the whole would turn on this; whether the taking of the guaranty from *Fordyce*, *without consulting the other partners, or having their privity*, was not such gross negligence in the *Hopes*, as would amount to fraud or covin. A verdict was given for the defendant. It is peculiarly observable, that the omission, on the part of the *Hopes*, to ascertain, by enquiry of the partners of *Fordyce*, whether they assented to his pledging the partnership as his surety, was considered as a gross neglect, and equivalent to fraud.

The same question occurred in *Foot* v. *Sabin*, 19 *Johns. Rep.* 154. It was determined, by the court, that where one of two partners subscribes the partnership firm to a note, *as surety* for a third person, the partnership is not bound; and the burden of proving the authority or consent of the other partner, lies on the creditor or holder of the note.

The two cases last cited are directly in point, and demon-

*Fairfield,*
June,
1825.

N. Y. F. In. Co.
*v.*
Bennett.

strate conclusively, that the note in question, so far as relates to the partnership of *Bennett, Cady & Co.*, is utterly void.

A new trial must be granted.

PETERS and BRAINARD, Js. were of the same opinion.

BRISTOL, J. dissented.

New trial to be granted.