## MAULDIN v. THE BRANCH BANK AT MOBILE.

1. The act of 1811, which requires, that the execution of a writing sued on shall only be denied by plea, supported by the affidavit of the defendant, does not prescribe a plea different in form, from what was proper at common-law, to throw upon the plaintiff the *onus* of proving the genuineness of the writing.

2. In proceedings, at the suit of a Bank, by notice and motion, special pleading is dispensed with. Although, the plea of *non-assumpsit*, supported by affidavit, would put in issue the fact, whether an endorsement was made by the party sued; yet, an endorser may interpose a formal denial tendering an issue, accompanied by an affidavit; and in a summary proceeding this will be regular.

3. A partnership is bound for the acts of each of the partners, (done in the name, and apparently on account of the firm,) while it is supposed to exist; and to relieve themselves from this responsibility, they must give a reasonable 'notice, that they are no longer partners.

4. In respect to all persons who have had no previous dealings with the firm, a constructive or implied notice is sufficient. This is usually given by advertisement in a newspaper, published at the place where the firm was established, if any, if none, then in a paper published convenient thereto; and sometimes, for the greater caution, in a paper published at a point, where the firm had been accustomed to do business.

5. As it respects persons having previous dealings with the firm, notice of dissolution must be specially addressed, or personally communicated to them. This rule however, has sometimes been so far relaxed, as to allow circumstances to be proved for the consideration of a jury, from which they may infer that personal notice was received.

6. In regard to notice of dissolution, it is sufficient, if the severance of the partnership is made as notorious as the partnership itself; and as one partnership may be more extensively known than another, it follows, that the same degree of publicity is not necessary to inform the world of the severance of every firm.

7. The reasonableness of notice of the dissolution of a partnership, is a mixed question of law and fact, to be submitted to a jury, for their decision, under the direction of the Court.

8. Notice of the dissolution of a partnership, published in one of the usual advertising Gazettes of the place where the business was carried on, and in a fair and usual manner, is not only presumptive, but conclusive evidence of notice.

9. A party receiving a security in the firm name, after dissolution, may for the purpose of showing that notice had not been sufficiently diffused, prove that the partnership was more extensively known, than a jury would be warranted in infering from the nature of its business.

10. One partner cannot, without the assent of his copartner, give a security in the firm name. for the payment of his individual debt; nor can he without such assent lend the partnership name as a surety, endorser or gaurantor for a third person.

Mauldin v. The Branch Bank at Mobile.

11. A person receiving such security from an individual partner, could not recover, because he would be *particeps doli;* yet, if the paper were of such a character as to be subject to the law merchant, an innocent endorsee, acquiring it in the usual course of trade, might maintain an action against the partnership.

12. The burthen of proving the assent of the copartners, to the use of the partnership name by one of the partners, lies upon the person taking the security.

13. If the payee of a note or bill, or any person whose name appears thereon previous to the last endorser, offer it to a bank to be discounted, for his benefit, the transaction on its face imports, that the last endorsement was made to enable the offerer to raise money by its negotiation.

THIS was a proceeding by notice, at the suit of the Bank against the plaintiff in error, in the County Court of Mobile. The notice sought to recover of the plaintiff, as surviving partner of Mauldin & Morgan, upon an endorsement alledged to have been by that firm, of a note negotiable and payable at the Bank; by which note, L. Rogers, as maker, on the 14th August, 1337, promised to pay Wm. Taylor, or order, four months after date, two thousand five hundred and fifty hundredths dollars, for value received.

The defendant below, pleaded, 1. *non*-assumpsit. 2. "That the endorsement on which he is charged in said plaintiff's notice, is not his endorsement, nor made by him, or his authority; and of this, he puts himself upon the country."

The second plea was verified by the defendant's affidavit; but, on motion of the counsel for the Bank, this plea was stricken out, and the cause was tried on an issue to the plea of *non-assumpsit.*

On the trial, the defendant excepted to the ruling of the Court. From the bill of exceptions, it appears that, after the plaintiff had read the note described in the notice, with the protest for non-payment, the defendant offered a witness who proved, that the firm of Mauldin & Morgan once existed, and did business at Claiborne, in the County of Monroe, Ala.; that in August, 1836, that concern sold their entire stock, and then dissolved their co-partnership; though it was not shown, that any public notice had been given of the dissolution; Immediately after Mauldin & Morgan ceased to do business together at Claiborne, the latter removed to the City of Mobile, and formed a partnership with one Burwell Boykin, for the purpose of doing business in that City, under the style of Morgan

& Boykin; at the time the note in question bears date, the last mentioned firm had been engaged in business about eighteen months; the formation of the new, and the dissolution of the old partnership, were both matters of public notoriety.

Taylor, the payee of the note, testified that the note was made to be discounted for his benefit; and was discounted for his accommodation, and the proceeds placed to his credit. He further proved, that the endorsement of Mauldin & Morgan, was in the hand-writing of the latter.

On these facts, the Court charged the jury in substance as follows, viz: if the endorsement was made after the dissolution of the firm, and after public notice thereof had been given, the defendant is not chargeable, but if made during the continuance of the partnership, or even afterwards, if no notice of dissolution had been published, then the plaintiff is entitled to recover· If the endorsement was made under the circumstances supposed, the fact, that it was made for the accommodation of Taylor, cannot affect the question of the defendant's liability.

The Court further instructed the jury, that the notice of the dissolution of a partnership may be given by a newspaper publication; by recording the articles of dissolution in the office of the County Court; by posting up public notice at public places. But persons with whom the concern had dealings, must be specially informed of its dissolution.

If however, the Bank was in any manner, informed previous to discounting the note, that the firm was dissolved, then the defendant was not liable.

The defendant, by his counsel, prayed the Court to instruct the jury, that they were authorized to infer a notice to the Bank, from matters of public notoriety, and other circumstances; which charge the Court refused to give. Another charge was asked at the instance of the defendant, and refused; which need not be particularly noticed, as it does not raise any other question of law, than is presented by the instructions given.

A verdict and judgment being rendered for the plaintiff, the defendant has sued a writ of error to this Court.

CAMPBELL, for the plaintiff in error.

LINDSAY, for the defendant.

COLLIER, C. J.—The assignment of error lead us to inquire, *first :* Did the County Court err in striking out the second plea of the defendant. *Second :* Were the instructions to the jury conformable to law'; and, *Third :* Were the instructions prayed properly refused.

*First.* By the third section of the act of 1811; "regulating judicial proceedings in certain cases, and for other purposes." It is enacted, that it shall not be lawful for the defendant in any suit, founded on any writing, whether under seal or not, to deny the execution of the same; unless it be by plea supported by the affidavit of the party pleading, which affidavit shall accompany such plea, and be filed therewith." (Aik Dig. 283.)

This statute does not prescribe the plea, by which the defendant shall be allowed to deny the making or execution of a writing sued on; but doubtless intended, without an interference with the law of pleading, further than is expressly provided, to leave the defendant to select such plea, as would, at common law, throw upon the plaintiff, the burthen of proving the genuineness of the writing. If the action was founded upon a specialty, the appropriate plea would be *non est factum*—to *debt* or *assumpsit*, on a promissory note, &c., the plea would be *nil debit* or *non-assumpsit*, according to the form of the action.

In summary proceedings at the suit of a Bank, by notice and motion, the notice does not designate, or characterize the action; and it would be difficult in many cases, to determine its form, so as to adopt the plea to the evidence to be adduced, if the strict rules of pleading were adhered to. But this difficulty cannot exist; for in prescribing the remedy by motion, it has been held, that the Legislature, "by necessary implication dispenses with special pleading, and all technicality." (Lyon v. The State Bank, 1 Stewart's Rep. 466.)

True, a formal plea of *non-assumpsit*, supported by an affidavit, would have thrown upon the plaintiff the necessity of showing, that the indorsement was made by the defendant, or his authority. Yet, in a case commenced as this was, the defendant was not obliged, thus to deny the endorsement; but might interpose a formal denial, tendering an issue, and veri-

37

fied by an accompanying affidavit. This latter mode was adopted by the defendant, and the County Court consequently erred, in striking out his second plea.

*Second :* A dissolution of a partnership may take place *inter partes*; and yet, the connection continue, as it respects the rest of the world. As credit is given to the entire firm, all those who belonged to it, are bound while it is supposed to exist. To relieve themselves from this responsibility, they must give a reasonable notice, that they are no longer partners ; and to such as may be considered to have had this notice, they will each be answerable for his own acts, and no further.

In respect to all persons, who have had no previous dealings with the concern, a constructive or implied notice of its dissolution, will be sufficient. The most usual mode in England, of giving this notice to the world at large, was by an advertisement in the *London Gazette*, a paper which was looked to, as the organ of Commercial intelligence ; but, at the present day, it is believed, that publication in some other Gazette of that country, having a respectable circulation, and convenient to the place at which the firm did business, is, perhaps, more common. [Leeson v. Holt, 1 Starkie's Rep. 186 ; Newsome v. Coles, 2 Camp. Rep. 617 ; Rooth v. Quin, 7 Price's Rep. 193.)

In the United States a constructive notice is generally given, by advertisement printed in some newspaper, published at, or near the place at which the firm was established ; and sometimes for the greater caution, in a paper, also published at some other point, at which the firm had been accustomed to do business.

But, as to persons who have had dealings with the firm, during its continuance, it is requisite, that actual notice be given, or that such steps have been taken, as to warrant the inference, that it was received by the creditor. (3 Kent's Com. 38 to 40 ; Watson on Part. 284 ; Collyer on Part. 311 ; Cary on Part. 181.) This is most usually done, by addressing the correspondents of the firm specially, or transmitting them a circular advising them of its dissolution.

Notwithstanding, the law is thus laid down by elementary writers, yet, it has been held, in this country, that a notice of

the dissolution of a partnership, published in a Gazette, which was taken by a bank, might be regarded as a notice to the bank, though, it had had previous dealings with the firm. (Bank of South Carolina v. Humphrey, 1 McCord's Rep. 388 ; See also, Martin v. Walton, 1 McCord's Rep. 16 ; Irby v. Vining 2 McCord's Rep. 379; Lansing v. Gaine & Ten-eyck, 2 Johns. Rep. 304 ; Ketcham v. Clark, 6 Johns. Rep. 144 ; Graves v. Merry, 6 Cowen's Rep. 701 ; Bristol v. Sprague 8 Wend. Rep. 423.

And in Jenkins v. Blizard, 1 Starkie's Rep. 418, it was decided, that where the dissolution of a partnership has been advertised in a newspaper, proof that the plaintiff, who had been in the habit of dealing with the firm, has read the paper, or that it has been delivered in the usual course, at his house, is sufficient to be left to a jury, to consider whether the attention of a tradesman in reading a newspaper, is not likely to be attracted by notices of the dissolution of partnerships; and whether under all the circumstances of the case, he has not received notice of the dissolution.

We cite these cases merely to show, that the arbitrary rule in regard to notice, which has been so often declared, both by the English and American Courts, has been sometimes relaxed ; and a disposition manifested, to consider the notice given in some other form, sufficient evidence, to be left to a jury, from which, they may infer, that a party receiving an engagement, in the name of the firm, was informed of its previous dissolution.

If the severance of the partnership is made as notorious as its existence was, it would seem, upon principle, that this is all that can be required. The object of notice is, to free the ex-partners from liability to those, who may take a security in the partnership name, after the firm has been dissolved; and the ground on which a joint responsibility rests, in such cases is, that the partnership being once known to exist, its continuance will be presumed in favor of third persons, until its dissolution has been made public. When this has been done, every person may guard against acts by one of the partners, in the name of all, and all will not be chargeable with the fraud of one. (Cary on Part. 182.)

If it be true, that the dissolution need only to be made as notorious as the partnership; it would follow, that the same degree of publicity, would not be necessary, to inform the world of the severance of every firm. The nature of the business of one, might not make it known beyond its immediate vicinity; while the business of another, and its long standing might extend a knowledge of its existence to different parts of the world; a publication which would give notice to those aware of the partnership in the one case, would have that effect in the other, to but a limited extent. This view, we think, is sustained by Mitchum et al. v. The Bank of Kentucky, 9 Dana's Rep. 166, In that case, it appeared, that the plaintiffs in error, had been partners, in a small town in Kentucky, in a mill and cotton factory ; the question was, whether there had been sufficient notice of the dissolution, to affect the Bank, which had had no previous dealings with the firm. The Court were of opinion, that partners, upon dissolving their connection, were not required to give personal notice to any, but those who have had previous dealings with them. They could not give direct notice to every body ; and, as to those who have had no previous dealings with them, it is only necessary, that a reasonable opportunity should be be afforded, of knowing the fact of dissolution. But while it is easy to perceive, that it is incumbent on the partners, to furnish reasonable means of knowledge to all who may be concerned, it is difficult to prescribe the exact nature of the means, which must be afforded, or the precise extent to which knowledge must be diffused, or circulated. " This," say the Court, " must in a great degree depend upon the nature of the business, in which the firm is engaged, and the extent of its ordinary dealings and transactions. The same means and opportunity of notice, could not be required in the dissolution of an obscure partnership, the entire sphere of whose operations, is confined to the village, or small neighborhood, in which its business is done, as in the case of a partnership, in a business more important and extensive." Further, " the reasonableness of the notice in any given case, and the extent to which it should furnish the opportunity of knowing the fact, must depend upon the nature of the occupation in which the firm was engaged, and the extent of

dealing belonging generally, to that occupation. If, from the nature of the occupation, the dealings and business of the firm should be presumed to be confined to a particular town or neighborhood, a general notice within that town or neighborhood, might be deemed sufficient; unless it were shown, that their dealings were in fact, more extensive." If this case is to be regarded as an authority, then the reasonableness of notice is a mixed question of law and fact, to be submitted to a jury, under the direction of the Court, whether notice in the particular case, under all the circumstances, has been sufficient to justify the inference of actual or constructive knowledge of the fact of the dissolution. Such is the opinion of Chancellor Kent, to sustain which, he cites quite a number of decisions. (3 Kent's Com. 39; and cases cited.) And the case of Mowatt v. Howland, 3 Day's Rep. 353, in which it was held, that, where all the facts are ascertained, the reasonableness of notice may be a question of law for the Court, does not oppose the conclusion we have stated. In that case it appeared, that notice of dissolution was only published in a newspaper of the place where the business was carried on; and the question was, whether it should not also have been published in the city of New York, which was in another State, but where two of the partners resided. The Court was of opinion, that the publication was sufficient notice of the dissolution to the plaintiff, who never had been a correspondent of the firm. This decision rests upon the rule, that notice in one of the usual advertising Gazettes of the place where the business was carried on, and published in a fair and usual manner, is not presumptive evidence merely, but conclusive evidence of the fact, as to all persons who have had no previous dealings with the partnership. But it does not exclude the idea, that other evidence may not be left to the jury, from which a notice may be inferred.

If the law be as we have supposed, that the notice of the dissolution of the partnership, need only be as notorious as the partnership itself, it would then follow, that as against one who had received a security from one of the partners, after the connection ceased, in the name of the firm, no notice would be necessary; if he resided, and the transaction took place at a dis-

tance, so remote from the scene of the parnership operations, as to render it improbable, that he ever heard of its existence. The distance to which a partnership may be known, must, in the absence of positive proof, depend upon the nature and extent of its business. One may not have notoriety beyond the immediate neighborhood or county in which it is established, while another may be known in other States, and a third in foreign countries. And if a party, seeking to charge partners, who have not given the usual notice of the dissolution of their connection, would show that a knowledge of the partnership was more extensive than a jury would be authorized to infer, from the mere proof of its existence and character, it will be competent, for him to introduce evidence tending to such a conclusion.

In respect to a mercantile establishment, located at Claiborne, unless its busness was so inconsiderable, as to make it improbable, that it had any transactions at Mobile, the reasonable intendment would be, that its existence was known there; and, if conducted by a partnership, that the partners were also known; unless they were dormant and took no part in its management. But this intendment is a question of fact, and should have been left to the jury. Instead then, of instructing the jury that the publication of notice in a newspaper, that the partnership was dissolved, was indispensable to protect the defendant from the act of Morgan, the Court should have modified its charge, so as to make it conform to what we have indicated to be the law, applicable to the facts. In other respects, as to what would constitute a notice of the dissolution, the charge of the Court was quite as favorable, and perhaps more so, than the law would warrant.

The view we have taken of this question, seems to us, to be not only well sustained by principle, but also, by the analogies of the law, in regard to dormant parties. A partner, whose name does not appear in the firm; it is said, is only liable for goods, furnished during the time he was actually a partner, and received a share of the profits; but, if he was known to be a partner, though his name did not appear, the usual notice of dissolution is necessary to obviate future liability. (Evans v.

Drummond, 4 Esp. Rep. 89)  Thus, in the case of Carter v.
Whalley, et al., 1 B. & Adol. Rep. 11 ; it appeared, that Saun-
ders, together with his co-defendants, carried on business un-
der the name of the "Plas Madoc Colliery Company,"
Saunders withdrew from the firm; and it afterwards became in-
debted to the plaintiff; but no notice was given to the plaintiff,
or the public of Saunders' withdrawal.  *The Court of King's
Bench held*, that Saunders was notliable for the debt, there be-
ing no sufficient evidence, that he had ever, while a partner, re-
presented himself as such to the plaintiff, or appeared publicly
in that character, so as to authorize the presumption, that the
plaintiff knew of it.  To the same effect, see Armstrong et al.
v. Hussey et al., 12 Serg. & R. Rep. 317.

These were cases of dormant partners; and in order to
charge them with an indebtedness, incurred by some member
of the firm, after dissolution, it must have been shown, that
they were known publicly, or to the party giving credit, to
have been partners.  But in the case at bar, the names of both
the partners appeared in the firm; and as far as a knowledge of
the partnership extended, the individual partners will be sup-
posed to have been known.

*Third :* It may be laid down generally, that one partner
has an implied authority to bind the firm, by contracts relating
to the partnership, whether those contracts are mere oral or
written agreements, or are evidenced by negotiable securities,
as bills of exchange and promissory notes. (Munson v. Rum-
sey, 1 Camp. Rep. 384.)  And where a contract is within the
scope of the partnership dealings, and avowedly upon the ac-
count of the firm, all the members will be bound, though they
were ignorant of the transaction, and were intentionally de-
frauded by the partner who entered into it.  But there will be
no obligation in favor of a person, who received a bill or note
of a firm ; if he knew the want of authority of the partner,
who made or transferred it; or, if he was aware, that the con-
sideration for the transaction did not relate to the partnership,
but was a benefit to the individual partner only.  (Galway v.
Matthew, 10 East Rep. 264.)  Yet the innocent endorsee of
paper, governed by the rules of the law-merchant, may main-
tain an action against the firm, although the holder with notice

could not. (Shirreff v. Wilkes, 1 East Rep. 48; Arden v. Sharp, 2 Esp. Rep. 523; Ridley v. Taylor, 13 East Rep. 175; Swan v. Steele, 7 East Rep. 210; New York F. Ins. Co. v. Bennett, 5 Conn. Rep. 574.)

In Chazournes v. Edwards et al. 3 Pick. Rep. 5, it was decided, that where a note is given in the name of the firm, by one of partners, for his private debt, and known to be so by the person taking it, the other partners are not bound by such note, unless they were previously consulted, and consented to the transaction. See also, Poindexter v. Waddy, 6 Munf. Rep. 418; Lansing v. Gaine, 2 Johns. Rep. 300; Fodt v. Sabin, 19 Johns. Rep. 154. And, notwithstanding some opposing decisions, it has been so often adjudged, as to be considered a settled principle, that one partner, without the assent of the firm, cannot pledge the partnership, either as surety, indorser or guarantor, for a third person. (Chitty on Bills, 9 Am. ed. 45 to 50, and cases cited; Foot v. Sabin, 19 Johns. Rep. 154; Mercein v. Andrus et al. 10 Wend. Rep. 461; Taylor v. Hillyer, 3 Blackf. Rep. 433; Hamill v. Purvis, 2 Penns. Rep. 177; Duncan v. Lowndes, 3 Campb. Rep. 478.)

But it has been sometimes supposed, that the assent of the other partners to the use of the firm name will be inferred, unless it is disproved, or there is something in the transaction itself, to show that it was not given. (Sutton v. Irwine, 12 Sergt. & R. Rep 13; Bank of Kentucky v. Brooking, 2 Litt. Rep. 45.) It may, however, be considered as settled, (at least in this State,) that the burthen of proving the consent of the other partners, lies on the person taking the security. (Rolston v. Click et al. v. 1 Stewt. Rep. 526; see also, Laverty v. Burr, 1 Wend. Rep. 529; New York F. Ins. Co. v. Bennett, 5 Conn. Rep. 574.)

To sum up the law upon this point, we repeat, that each partner has an authority from the other, to bind the firm by a contract relating to the partnership. That one partner cannot without the assent of his copartners, give a security in the partnership name for the payment of his individual debt; nor can he, without such assent, lend the name of the firm as a surety, indorser, or guarantor for a third person. But although, the person receiving such security could not recover, because

he would be *particeps doli;* yet if the paper were of such a character as to bring it within the control of the law merchant, an innocent indorsee acquiring it in the usual course of trade, might maintain an action against the partnership.

To apply these principles to the case at bar; if the note in suit, was endorsed by Morgan, in the name of Mauldin & Morgan for the accommodation of Taylor, the endorsement would impose a liability upon the firm in favor of the Bank; unless it could be shown, that the Bank was advised, that the note was not endorsed in the usual course of business, or in other words, of the circumstances under which the act was done. In the absence of all proof, if the last indorsers, or some one whose name did not appear on the paper, offered it for discount, the reasonable intendment would be, that it was endorsed in the regular course of business, and not for accommodation. But, if the note was offered by Taylor, or some one else, who became a party to it as an intermediate indorser, to be discounted for the benefit of the offerer, the transaction on its face would import, that the indorsement was intended merely to aid the holder to raise money by negotiating the paper. (Wallace v. The Branch Bank at Mobile, 1 Ala. Rep. N. S. 565.] And if it appeared, that such were the circumstances, under which the note was acquired by the Bank, then the *onus* of showing the transaction to have been regular, or the assent of the plaintiff in error, to the use of his name, would be thrown on the defendant.

This view has been taken upon the hypothesis, that the notoriety of the dissolution of the partnership of Mauldin & Morgan, was not such, as to free the plaintiff in error, from liability upon the indorsement made by Morgan ; for, if the proper notice of the dissolution of the firm, was not given, or, if the defendant had no knowledge of that fact, the partnership, as it respects the act in question must be considered as continuing.

This cause is one of more than ordinary importance; and to some extent, of first impression in this Court; and we have therefore, thought it proper to examine it thus at length, that it may serve not only as a guide in analogous cases, which may hereafter arise, but that the principles which must control its ulterior progress may be understood.

We have only to add, that the judgment of County Court is reversed, and the cause remanded.