Waldo, J.
It is an admitted principle that one partner has an implied authority to bind the firm by contract relating to the partnership, in whatever way such contract may be evidenced. Nor can any private arrangement between the partners limit their responsibility to third persons, unless such persons either expressly or impliedly assent to such arrangement. And it is equally true that there are instances in which one partner *may bind the firm by a contract in which the [ *190 ] firm has no interest; as when one partner gives out a negotiable note, made in the name of the firm, to a party who indorses it to another party for value, and the last party receives it without any knowledge that it was not made for a partnership transaction. In such case, the holder may recover the amount of the note of the firm, although no one of the firm, except the partner who made the note, knew that such a note was in existence. But one partner, as such, has no authority to bind the firm by a contract in which the firm has no interest, and which is outside of the scope of the partnership business, if these facts are known to the person with whom the contract is made. The proper application of these familiar principas will enable us to dispose of the question now before us.
*156 From the facts found bv the superior court, we see that Muzzy & Huntly were partners in business at the time of the transaction in question. Muzzy was then the debtor of the firm of H. E. & G, Merriman. He applied to Mix, the plaintiff, to assist him by an exchange of notes ; that is, he, Muzzy, was to give Mix the note of Muzzy & Huntly, for the sum of three hundred dollars, and Mix was to give Muzzy his, Mix’s, note for the same amount. The object of the parties doubtless was, to enable Muzzy to raise money upon the note of Mix, and so far as Mix was concerned, he supposed the money was to be raised for the benefit of the firm of Muzzy & Huntly. So far the transaction had nothing unusual in it, and was in a form very generally adopted by persons who raise, money upon accommodation paper. One note was the consideration of the other, and, in the hands of a bona fide holder, either could have been collected of the makers ; and if either had been paid by the maker to a bona fide holder, the other note might have been recovered of the maker thereof in an action upon the note in the name of the payee. But Muzzy, after obtaining the note from Mix, indorsed it in blank, in the name of the firm, and delivered it to H. E & G. Merriman, in payment of his private debt to them. The Merrimans had no right to receive the note of the part- [ *191 ] nership, *or the property of the partnership, in payment of their debt against one of the partners, without the knowledge or consent of the other partner. Such a transaction would be a fraud upon the other partner, or, more properly, it would be what is called cooin, which is by Lord Ellenborougli defined to be “ a contrivance between two to defraud or cheat a third.” It would be a contrivance between Muzzy and the Merrimans to appropriate the property of Huntly to pay a debt of Muzzy’s which of course Huntly was under no obligation to pay, and it would therefore operate as a fraud or cheat upon him ; and this too, would be done with a full knowledge of all the facts by Muzzy and the Merrimans, who also knew that Huntly was ignorant of the whole proceeding. This transaction, therefore, between Muzzy and the Merrimans, as found by the superior court, did not give the Merrimans any right to. resort to the firm of Muzzy & Huntly in any event.. Had they undertaken to sue the firm upon their indorsement of the note, after it had been protested, they must have failed. New York Firemen's Ins. Co. v. Bennett, 5 Conn., 574. Arden v. Sharpe, 2 Esp., 524. Chazournes v. Edwards, 3 Pick., 5.
But it is said that, admitting that the Merrimans could not have recovered against Muzzy & Huntly on their--indorsement, still they might have recovered the amount of-the note against *157 the maker, who parted with it upon a good and sufficient consideration. We can not assent to this proposition. In a suit by the Merrimans as indorsees against Mix, the maker, it would be competent for the defendant to show that the note was fraudulent in its inception, or was fraudulently put into circulation, and, either of these facts being established, before the plaintiffs would be entitled to a judgment, they would be required to show that they came by the note fairly, and had no knowledge of the fraud. Munroe v. Cooper, 5 Pick., 412. But the facts found show conclusively, not only that this note was fraudulently put into circulation as against Huntly, but also that the Merrimans were parties to that fraud and cognizant of it. To permit them to take *a judgment, under these cir- [ *192 ] cumstances, against the maker of the note, would be to allow them to take advantage of and perfect their own wrong, and would be the crowning act of a serious injury to the rights of an innocent person.
It is further claimed that the plaintiffs should not be prejudiced by the covin of the Merrimans and Muzzy, because he supposed he was liable to pay the note to the Merrimans, and, entertaining this supposition, he gave the note of the 12th of November, 1855, in good faith, and took the note in suit as security therefor ; and now having paid the note last given, he ought to recover the amount paid from the persons on whose credit he loaned the first note. It is not necessary for us to express an opinion as to what would have been the rights of the parties, had‘Mix paid the first note at maturity, without notice of the manner in which it came to the Merrimans. This case presents another and different aspect; and we have to notice that, before Mix gave the second note and took the note in suit as security for the same, he had learned that the first note had been indorsed by Muzzy, in the partnership name, and delivered to the Merrimans, to satisfy a private debt of Muzzy to the Merrimans. Whatever, therefore, Mix did after he had this information, was done with a full knowledge of the covinous transactions between those parties. He knew that Muzzy was attempting to appropriate the property of the company to pay his own debt, and he knew this was a fraud upon his partner. Still, he proceeded to give a new obligation to the Merrimans, and take a new note, in the name of the firm, from Muzzy. It is said that he supposed he was liable to pay his first note, and this was the reason of his giving the second. We have shown that he was mistaken in relation to his liability on the first note. He voluntarily paid or satisfied a note which he could not have been compelled to pay. In doing this he might have made *158 Muzzy his debtor, and being his debtor, he might have taken from him such security for his debt as he had authority to give. Muzzy did give the note in suit, but therq is nothing in the case to show that he had any authority, either express or [ *193 ] implied, to bind the firm to pajr his private *debts. The only security, therefore, that Mix took by this note, was the responsibility of Muzzy, whose private debt to the Merrimans he had paid. Nor can we perceive that the aspect of the case is at all changed because Mix supposed he was liable to pay the first note. If he made a mistake he should suffer its consequences. It will hardly be claimed that a misapprehension of- one’s legal liabilities, and a consequent pecuniary loss, can be remedied by subjecting to the same loss a person who had nothing to do with the transaction and was entirely ignorant of its existence. When Mix had learned the true nature of the transaction between Muzzy and the Merrimans, in relation to the first note, it was his-duty to have stopped, or, at least,-to have consulted the party whose legal lights were to be injuriously affected. Had he done so, no one would have been injured. It is true the Merrimans then held his note, which he had given Muzzy & Huntly; but they only held it as against Muzzy, and for his private debt. They would therefore have been in the same condition that they were in before they assented to the fraud upon Huntly, and neither Mix nor Huntly could have been held liable for any demand in their favor. The action of Mix, after a knowledge of all these facts, though done in good faith, and under a misapprehension of his legal rights, can not, we think, change the liability of Huntly. We therefore advise the superior court to render judgment for the defendant Huntly,
In this opinion the other judges concurred.
Judgment advised for the defendant Huntly.