## JOHN W. HENDRIE v. MEYER BERKOWITZ, GEORGE W. WARD, AND J. L. NEY.

FIRM INDORSEMENT OF NOTE.—Where one of two partners indorses a note in the name of the firm as an accommodation for a third person, without the authority or consent of the other partner, such other partner is not bound by the indorsement as to any party taking the note with notice that the indorsement was made in the character of surety ; and in such case the burden of proving the authority or consent of the copartner rests on the person holding the note.

NOTICE OF ACCOMMODATION INDORSEMENT.—If a note is indorsed by a member of a firm, in the firm name, and a third person finds it in the hands of the maker, this is notice that the firm indorsement was for the accommodation of the maker.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Thomas H. Brents*, for Appellant.

This is the first act by which Ney essayed to bind the firm —the act upon which all subsequent acts were predicated— without which no liability against any one except Ward could have accrued.

Without a sufficient prior authority from Berkowitz to Ney to do this act, or a subsequent ratification, whence such an authority would be implied, Berkowitz—not being a party to the indorsement—cannot have been bound by it.

Such an authority must be shown before a recovery can be had against Berkowitz upon the indorsement; and the *onus probandi* is with the plaintiff.

CAL. REPS. XXXVII—15

As between partners an authority can only be created in one of three ways, viz:

1st—When the act done is within the usual scope of the partnership business, the law implies an authority therefor from the other partners.

2d—When the act done, though not within the usual scope of the ordinary business of such a partnership, is, nevertheless, according to the known habit of dealing of *that* partnership in similar cases, the law likewise implies an authority from the other partners therefor in favor of one who, from a knowledge of such course of dealing, has been induced to trust the firm.

3d—When the other partners sought to be charged, having full knowledge that the particular act had been or was about to be done, expressly assent, or, by acting in *mala fides*, induce an innocent party to infer an authority, and on the faith of it to credit the firm—precisely as in other cases of special agency. (See Par. on Notes and Bills, 142; Story on Agency, Sec. 37; *Fenn* v. *Harrison*, 3 Term R. 757; also Story on Part. Secs. 126, 127.)

Let us inquire then, in the first place, whether this act was within the usual scope of the business of this firm?

Theirs, as we have seen, was a limited, and not a general partnership—a partnership for the special and exclusive purpose of "manufacturing ladies' cloaks and mantillas." The act of indorsing a promissory note, or any act relating to commercial paper, does not properly fall within the usual scope of such a partnership; for it is a well established rule of the law merchant that one member of a manufacturing firm cannot bind his copartner, per force of their partnership relations, for the payment of any commercial security; it is beyond the scope of their legitimate business. Such seems to be the doctrine laid down in the cases of *Greenslade* v. *Dower*, 7 B. & C. 635, as to farmers; *Dickinson* v. *Valpy*, 10 B. & C. 128, as to miners; *Eastman* v. *Cooper*, 15 Pick. 280, 290, as to brewers; *Gansevoort* v. *Williams*, *supra.*, as to "dealers in fur and manufacturers of caps;" and *Foot* v.

*Sabin, supra.*, as to partners engaged "in collecting a large quantity of boards for the Montreal market."

*A fortiori*, it is incompetent for a single partner to pledge the partnership responsibility for the accommodation of third parties. (Parsons on Notes and Bills, 140.)

*Whitney & Naphtaly*, for Respondent.

Immediately after the note was indorsed, Ney, who had indorsed the note, communicated this fact to his partner, and explained to him the object he had in view. To use his own language: "I said I thought Ward was good, and that he might do us a similar favor in future." Berkowitz probably thought so too, for he did not object to the act. He did not attempt to recall the note. He did not attempt to notify the holder, while the maker was yet solvent, that he must look to the maker, and not the indorsers, for his money. He obtained by his tacit consent to this indorsement, and intended to obtain, a substantial mercantile advantage. Men in the commercial world pay money, and large sums of money, every day for indorsements. Credit is capital. Berkowitz obtained it by the giving of this indorsement, instead of by paying money for it. This was in no sense accommodation paper. It was made for the benefit of the firm of Ney & Co. to procure them the advantage of having Ward's indorsement when they required. It amounted to an exchange of indorsements, which afforded a good consideration. (14 Ohio, 592; 22 Maine, 184.)

By the Court, SAWYER, C. J. :

Defendants Ney and Berkowitz were partners in the business of manufacturing and selling women's cloaks and mantillas, under the name and style of J. L. Ney & Co. The business did not extend to other matters. On the 17th of September, 1866, George W. Ward, for the purpose of raising money for his own use, executed a promissory note for

two thousand dollars, and interest at one and a quarter per cent per month, payable thirty days after date, to the order of J. L. Ney & Co., which note Ney, at Ward's request, for his accommodation, and without the knowledge or consent of Berkowitz, indorsed in the name of the firm, and the plaintiff, Hendrie, discounted the note, after such indorsement, for defendant Ward, paying him the face of the note. This is the only instance of an accommodation indorsement in the name of the firm; and by the terms of the written contract between the partners existing at the time, Ney was not to sign notes in the name of the firm.

This action is brought on the said note against Ward, as maker, and Ney and Berkowitz, as indorsers. Ward made no defense at the trial, and Ney, although present as a witness for plaintiff, was not served, and did not appear in the action. Plaintiff had a verdict and judgment against Ward and Berkowitz, and his motion for new trial having been denied, Berkowitz appeals from the order denying the motion, and from the judgment.

The act of indorsing the note for the accommodation of Ward, was, clearly, neither within the scope of the ordinary business of the partnership, nor in accordance with any habit of dealing of the partnership, known or unknown; for this is the only transaction of the kind had in the name of the firm. No authority in Ney, therefore, can be inferred or implied on either of these grounds, to make an accommodation indorsement in the firm name, and either an express authority or consent on the part of Berkowitz, at the time, or a subsequent ratification of the act of Ney by him, must be shown in order to charge Berkowitz in favor of a party having notice that the indorsement was made in the character of surety for Ward. When one of two partners subscribes the copartnership name to a note *as surety* for a third person, without the authority or consent of the other partner, the latter is not bound, as to any party taking the security with notice; and the burden of proving the authority or consent of the other partner lies on the creditor or holder

of the note. (*Foot* v. *Sabin,* 19 Johns. 155; *Laverty* v. *Burr,*
1 Wend. 531; *Rollins* v. *Stevens,* 31 Me. 454; *Sweetser* v.
*French,* 2 Cush. 311; *Williams* v. *Walbridge,* 3 Wend. 417;
*Bank of Rochester* v. *Bowen et al.,* 7 Wend. 158; *Boyd* v.
*Plumb,* 7 Wend. 309; *Stall* v. *Catskill Bank,* 18 Wend. 478;
*New York Fire Insurance Company* v. *Bennett,* 5 Conn. 580.)

Under the law as thus stated, and as the same was sub-
stantially given to the jury in the charge of the Court, the
jury must have found, either that Ney had authority to
indorse in the firm name as surety for Ward, or that Berko-
witz subsequently ratified the act, or that plaintiff took the
note without notice that the indorsement was for the accom-
modation of Ward, otherwise the verdict must have been
for the appellant. Berkowitz specifies as grounds for a new
trial that the evidence is insufficient to justify the jury in
finding in favor of plaintiff on either of these points, and
we are of opinion that his position is sustained by the evi-
dence as it appears in the record.

It is very clear, as we have before stated, that there was
nothing in the nature of the business, or in the known habits
of dealing of the firm, from which Ney's authority could be
inferred, and it was necessary for the plaintiff to show affirm-
atively, express authority, or the assent of Berkowitz to the
act, or a ratification of the act after it was done. No express
authority or assent before, or at the time of the act is even
attempted to be shown. On the contrary, it appears that by
their contract in writing Ney was not permitted to sign notes
at all in the name of the firm. Berkowitz was not present
at the time of the indorsement, and it is not pretended that
he knew anything about it till after it was done. The only
testimony that can be claimed to have a shadow of tendency
to show that Berkowitz ratified the indorsement, is that of
Ney himself. He says that, after the indorsement—"I really
do not recollect" when, the same day or the next, he
informed Berkowitz of it, saying, at the time that he, Ney,
"thought Ward was good, and might do us a similar favor
in future. He [Berkowitz] did *not say anything particular*

*against it that I recollect."* On cross examination, to the question, "Did he (Berkowitz) remonstrate against your signing the firm name?" he answered, "He didn't *particularly, that I recollect."* This is the entire testimony to show a subsequent ratification, and this is at best negative testimony, resting upon a want of recollection. He simply did not recollect that Berkowitz said "*anything particular*" against it, at the only time when his attention is pretended to have been called to it. It is not pretended that he said anything in favor of it, or in fact anything at all. Berkowitz testifies positively that Mr. Ney, "my partner, came and asked me whether he should indorse a note. I told him he had no right to do so;" that "he spoke to me, and I at once refused," and that he did not learn for the first time that the note had been indorsed, "till this suit was commenced by attachment." Ney nowhere states that he did not ask his partner if he should indorse the note, or that Berkowitz did not refuse, or tell him he had no right to do so. The only point of conflict, is, as to whether Ney informed Berkowitz of the indorsement after it was made, and on this point, or as to what took place at the time, Ney's recollection is far from distinct. Taking the testimony in its strongest aspect against appellant, as to the point wherein there is a conflict, and the worst that can be said is, that Ney informed Berkowitz, after the act was done, that he had indorsed the note, and he did not recollect that Berkowitz said "*anything particular against it.*" This want of recollection as to what Berkowitz did or did not do or say, in the face of the other uncontradicted testimony of Berkowitz, or even without it, is clearly insufficient to justify a jury in finding a ratification of the act on his part after it was done. There was certainly no express ratification shown, and what took place at this time in no way came to plaintiff's knowlege or affected his action. In *Mercein* v. *Mack*, 10 Wend. 464, a stronger case was held not to manifest assent.

It only remains to inquire whether, on the evidence, the jury were justified in finding that plaintiff had no notice of

the fact that the indorsement was made for the accommodation of Ward.  On this point, also, there is no conflict in the evidence, and the determination of the point rests on the testimony of plaintiff himself.  He testifies, it is true, that he had no knowledge that the note was made for the accommodation of Ward; that he did not know it was made for the purpose of raising funds for Ward.  But this general denial of knowledge must be taken in connection with other specific facts stated by the plaintiff.  He says he gave the money to the party from whom he received the note, and that party "was a broker *representing Ward.*"  He further says, "I don't know whether Ward received the money directly from me or the broker;" and that he (plaintiff) "gave the money, *expecting it to go to Ward.*"  He knew, then, that he was dealing with Ward in discounting the note, and Ward was the *maker* and not the *payee* of the note.  The note did not come to him in the regular course of business when the note is made for the benefit of the payee, but only in due course of business when the transaction is for the benefit of the maker of the note, and the payees and indorsers are sureties.  He found the note in the possession of the maker himself, who was primarily liable, instead of in the hands of the payees, or of some party who apparently received it from the payees in the regular course of their partnership business.  This is an indication upon the face of the transaction either that the note has been paid and taken up by the maker, and is, therefore, dead, or that the payees and indorsers are but sureties; and it is so understood in the business world.  The plaintiff was bound in law to take notice of these facts in discounting the note for the maker.  Upon this point Mr. Chancellor Walworth, in *Stall* v. *Catskill Bank*, 18 Wend. 478, well observes:

"If, therefore, it appears upon the face of the paper that the partnership name is signed *as surety* for some other person, the party who takes the note from *such person has actual notice of the fact that it is not signed in the ordinary course of*

*partnership business.* He must, therefore, at his peril, make the necessary inquiries and ascertain that there is some special authority for one partner to sign the partnership name as such surety, either express or implied. So, if the *drawer* of a note *carries it to the bank to get it discounted on his own account,* or transfers it to a third person, with the name of the firm indorsed thereon, *the transaction, on its face, shows that it is a mere accommodation indorsement, or the note would not be in the hands of the drawer; and the bank or person who receives it from the drawer being thus chargeable with notice that the firm are mere sureties of the drawer, and that it has not passed through their hands in the ordinary course of the partnership business, the members of the firm, who have been made sureties without their consent, are not liable to such holder of the note.*"

So, in *Bank of Rochester* v. *Bowen et al.,* 7 Wend. 159, a case very similar to this as to the state of the testimony bearing on the point now under consideration, the Court, by Mr. Justice Nelson, say: "The cashier of the bank, who must be considered the agent of the plaintiff, states expressly that the loan was negotiated by *Bowen,* one of the defendants [one of the makers]; that he procured the note, *and that the money was placed to his credit in the bank, which was afterwards drawn out by him upon his own checks;* that he considered the note Bowen's at the time of the negotiation of the loan. *This testimony, unexplained and uncontradicted, was undoubtedly sufficient to repel the prima facie inference that the firm of 'Aldrich & Searle' were principals to the note, and imposed upon the plaintiffs the burden of proving affirmatively either that Aldrich & Searle are interested in the loan, or that Searle consented to become security for the same.*" The same principle is recognized in *Austin* v. *Vandermark,* 4 Hill, 262; *Gansevoort* v. *Williams,* 14 Wend. 133; *N. Y. F. Ins. Co.* v. *Bennett,* 5 Conn. 580.

Now, in this case, the plaintiff, according to his own uncontradicted testimony, knew, or at least supposed, he was discounting the note for the maker, Ward, and not for the payees and indorsers, and, in the language of Mr. Chancellor

Walworth, (*supra*,) "the transaction, on its face, shows that it is a mere accommodation indorsement, or the note would not be in the hands of the drawer, * * * and being thus chargeable with notice that the firm are mere sureties of the drawer, and that it has not passed through their hands in the ordinary course of the *partnership* business," he also was chargeable with knowledge that Berkowitz, if made surety without his consent, was not liable.

The evidence, as presented in the record, clearly does not justify the jury in finding that plaintiff took the note without notice of the character in which the indorsement was made. He took the note under such circumstances that he was bound, under the law, to inquire into the character of the indorsement, and as to the authority of Ney in the premises, or take it at his peril.

Judgment and order reversed and a new trial granted, and remittitur directed to issue forthwith.

Mr. Justice CROCKETT, having been of counsel, did not sit in the case.