No. 7960.

ALLEN, NUGENT & CO., VS. G. W. CARY ET ALS.

33 1455
107 254

One partner cannot, without the assent of his co-partners, bind the firm for his individual debt or that of a third person.

Where a partner, acting *apparently* beyond the limits of his authority, untruly states his co-partners' consent, his representations will not bind them, even in favor of parties dealing with him in good faith.

It is the duty of every one who deals with a member of a commercial partnership *out of the line of business* of such partnership, to require evidence of that partner's special authority to bind his co-partners,—and this at the risk and peril of said party.

APPEAL from the Third District Court for the parish of Orleans. *Monroe, J.*

*W. S. Benedict* for Plaintiffs and Appellees

First—The holder of a promissory note of a commercial firm, who has acquired same for value, in due course of business, before maturity, is entitled to recover against said firm, and the members thereof, *in solido*.

Second—Where no suspicious circumstances are shown, due inquiry is made, and the holder has acted in good faith and given value, he is entitled to recover. 2 Wallace, 110 ; 26 Annual, 15.

Third—The holder is not required to see that each of the members of the firm signed the firm name to the note. C. C. 2870.

Fourth—The discount of commercial paper is usual in commercial firms.

Fifth—The fact that an accessory contract was entered into, in due course of the business, does not alter the relations of the parties.

Sixth—The date of a note is immaterial, and all that need be looked at, when same is offered for sale or discount, is the maturity thereof, at some subsequent date to the transaction. Daniel on Negotiable Instruments, section 83 ; Byles on Bills, 166; Edwards on Bills, 150 ; Bayley on Bills, 21 ; Story on Bills, 37.

Seventh—Where the firm, makers of a note, received the proceeds thereof, the firm will be considered as ratifying the Act, and all the members of the firm, even if the Act be done out of the course of its business, will be bound. Daniels on Negotiable Instruments, section 359 ; 4th Metcalf, 577 ; 18 Penn. 408 ; 16 Wend. 505.

Eighth—The firm is bound for the debts contracted in its name, even when they did not turn to its advantage, unless by the nature of the contract, it should appear that it had nothing to do with the affairs of the partnership. 11 Martin, 427 ; 4 Robinson, 193.

Ninth—Where the person dealing with a member of the firm, has no knowledge that the partner is making a contract in violation of his duties, and the person trading with him is in good faith, and the credit is given to the firm, and within the scope and objects of the firm receiving the proceeds of the transaction, the firm and members thereof are bound. 22 How. 266.

Tenth—A misapplication of the funds obtained for the partnership by one partner, does not affect the right of the party trading with such partner as against the firm. 5 Peters, 529.

*Miller, Finney & Miller* on the same side.

*John A. Campbell* for Defendant and Appellant :

First—The defendant, Richardson, denies liability upon the contract and endorsements contained in the record and described in the petition. He did not sign either paper. Neither paper was made by his partner in the course of the business nor within the range of the authority conferred upon a partner.

These facts appear on the face of the papers and from the testimony. The notes were signed for C. W. Cary by George W. Cary. They are dated in Alabama six months before any firm of Richardson & Cary existed. C. W. Cary had no account with and owed no debt to the firm, and his notes were not their property. They were drawn and endorsed to the plaintiffs as evidence of advances made to the maker at the time, and which were to be paid by him, with commissions, discount, interest and charges in addition, by the ship-ment of six hundred and fifty bales of cotton at different dates. The endorsement and guaranty were designed to assure and secure this contract and these extra profits. This appellant was never consulted upon the contract, nor has he approved or consen ted to it, and avers that it was not in the course of the business of the firm. Backelder vs. Rogers 12 Peters, 221; Kendall vs. Wood, L. R. VI. Exch. 243; Brettell vs. Williams, 4 Ex. 243; Leveson vs. Lane, 13 C. B. N. S. 278; Maulden vs. Bank, 2 Ala., 502; Levin vs. Carter, 3 Ired. 238; Leckie vs. Scott, 10 La. 412; Satterfield vs. Compton; 6 Rob. 120; Catskill Bk. vs. Stall, 18 Wend. 466; Bedarride des Soc. No. 159; 40 Dalloz. Jr. G. Société, No 927; Pothier on Part. § 101; Call on Part. 401, 478; Story on Part. §§ 121-13.

Second—The partnership articles prohibit the issue of the partnership name in any manner outside of the business of the firm, as dry goods merchants. Nor is there authority of law for one partner in such a firm to issue the paper of the firm or its signature on the notes of other persons as surety, guarantor, or for their accommodation. The assent of each partner to the issue of such paper is essential to charge such partner. His co-partner has no authority to do the act, nor can his oral statements be evidence of such authority. Authority must be proved as a fact in the cause by evidence of assent at the time or ratification after. The burden of proof of this fact of an original authority or a subse-quent ratification rest upon the plaintiffs.

The act is ultra vires and void, without a specific authority from the partners not signing. Brettell vs. Williams, 4 Exch. 622.

The rule is, if a partner acting apparently beyond the limits of his authority, untruly re-presents that he is acting with his co-partners's consent, they are not bound by his repre-sentation, nor are they liable for what may be done on the faith of it. Laverty vs. Burr, 1 Wend. 529; Foot vs. Sabin, 19 John 157; Ex Parte Agace, 2 Cox, 312; 3 Kent's Comm., Sect. 43, p; 1 Call on Part. § 459, 6 Ed; Hendren vs. Bercowitz, 37 Calif. 113.

Third—It does fully appear that the appellant did not consent to this contract and was ignorant of its existence while the firm continued. The firm had never made a contract like this, nor had obtained loans from banks, from insurance companies, brokers or factors. They had not issued a note.

The contract in so far as the appellant is concerned, is extraordinary and unusual. Scarcely a parallel has existed in the memory of merchants who testified in the suit. R. 117, 108, 107, 100, 96, 88, 91.

Fourth—The notes offered are sealed notes purporting to be made by a resident of Montevallo, Shelby county, Alabama, and this fact was known to the plaintiffs in the suit. There was no change of residence of the maker at the time of their maturity. There was no presentment made to the maker, nor demand of payment of the maker, at his domicil or personnally, at their maturity. And so the plaintiff has not established the facts to warrant a suit or recovery on such paper. 2 Mart. 183; 7 M. 364; 10 M. 18; 4 N. S. 186; 10 A. 107, 394, 783.

Fifth—The entire contract as embodied in the cotton contract drawn by the appellees, and containing a full description of the obligations of C. W. Cary, as a consequent of advances made to him, to be reimbursed by shipments of cotton to be disposed of in the course of the factorage business, so as to obtain the profits to arise, cannot be altered or varied by parol evidence. The appellees cannot by their parol testimony change a guarantor into a principal, nor superadd to the contract clauses or conditions not stated in it. On the face of the papers there was full and intelligible evidence, that the firm of Richardson & Cary, as represented by Cary, was engaged in business foreign to that of their articles of

partnership, and the scope of a dry goods business. It was a legal duty of the appellees to ascertain from this defendant whether he consented to it. Cary had no authority by law, nor by the articles of partnership to act for him. Cases before cited under 1 and 2.

*Bayne and Renshaw* on the same side.

The opinion of the Court was delivred by

BERMUDEZ, C. J, This is an action to hold John P. Richardson, as one of the partners composing the firm of Richardson & Cary, liable for the obligations of C. W. Cary as *drawer* of three notes, aggregating $7013 97, and as *obligor* under a contract by which he bound himself to the plaintiffs to make to them shipments of cotton, the proceeds to be applied to the payment of the notes, commissions and eventually attorney's fees in case of breach of contract. The liability is sought to be imposed on the grounds that the notes were endorsed by Richardson & Cary, and the fulfillment of the contract engagements was guaranteed by them.

G. W. Cary made no defense. Richardson denies liability. He admits that the name of the firm was endorsed on the notes and put to the guarantee, on the contract; but avers that it was so used by G. W. Cary, his partner, out of the course of the business of the firm, beyond the range of his authority as partner, in matters disconnected with the affairs of the partnership, without any authority; to plaintiffs' knowledge; that no consideration was received by the firm, or enured to its benefits, as plaintiffs knew or should have known.

There was judgment in favor of plaintiffs, allowing the amount of the notes, but rejecting the remainder of the claim.

From the judgment against him Richardson has appealed. In their answer to the appeal the plaintiffs ask that the judgment be amended so as to be allowed their entire demand.

The differences of the parties have to be determined particularly and almost exclusively, on the facts as they are shown to have occurred on the 23d of June, 1879.

The evidence first shows that, on the 12th of March, 1879, the formation of a partnership between John P. Richardson and G. W. Cary was announced in the papers, under the firm name and style of Richardson & Cary, for the purpose of doing a general dry goods and notion business at No. 31 Magazine street, in this city; the notice bearing the names of both partners.

The record next establishes that on the 23d of June, 1879, a contract, evidenced in writing, was entered into between one C. W. Cary of Alabama, with the plaintiffs, whereby he acknowledged his indebtedness to them in the sum of $7013 97, for advances made and to be made to him to carry on his business and planting interest, during the year 1879,

as evidenced by his three notes (which are described in the petition); and whereby he stipulated that, in order to reimburse said advances, he would, during the years 1879 and 1880, make shipments of cotton to the plaintiffs, and, in case of failure, he would incur and make good, certain pains and penalties specified in the deed, which concludes saying that: "it is well understood that, without the special agreements hereinbefore recited, to properly conduct their business relations, the said Allen, Nugent & Co. would not have entered into this contract."

This instrument is signed "C. W. Cary, by G. W. Cary," and bears the following stipulation :

"We hereby guarantee the prompt fu'fillment of the above contract,
          (Signed)                          "RICHARDSON & CARY."

The only witness who testified as to the occurrences of the 23d June, 1879, surrounding the drawing up and signature of the contract and the endorsement of the notes described in it, which are those sued on, is Mr. Lallande, one of the plaintiffs.

As we understand his testimony, it is to the effect that his firm was applied to early in June, 1879, by G. W. Cary, a partner in the firm of Richardson & Cary, for a loan of money for the wants of the partnership, which was refused, their business being a cotton factorage and the charges in the same and their advances being only made to parties dealing with them in that line.

On the 23d of June, following, some ten days later, it appears that Cary returned to plaintiffs' countingroom and stated that his firm had to remit to a great many parties, particularly to *one* who could influence a thousand bales of cotton, and that he was ready to accept the loan on plaintiffs' terms (which are detailed.) He was then handed a blank cotton contract and told to read it carefully; which he did. Under the pretence of going to *see* Mr. Richardson, his partner, he left the office, came back in about half an hour and said that Mr. Richardson thought the terms pretty tight, but that they would accept them. The blank was filled by the witness. G. W. Cary signed it for C. W. Cary in presence of the witness. He then, simultaneously, endorsed the notes, and signed the warrants on the contract in the name of Richardson & Cary, and passed them to plaintiffs through the witness. Thereupon, the plaintiffs delivered to G. W. Cary their check on the Canal Bank, to the order of Richardson & Cary, for $6550 27, which, upon being endorsed by G. W. Cary in the name of the firm, was collected by him.

The liability sought to be fastened upon Richardson depends upon the construction to be placed upon the contract, the notes and the testimony referred to. It cannot be affected by occurrences which took place previously or subsequently and which do not prove knowledge, consent or ratification by J. P. Richardson.

It is clear to our minds, that the doings of G. W. Cary, on the occasion, can only be viewed as the acts of a partner using the partnership name and credit to secure the obligations of a third party, to the direct, immediate knowledge of the other contracting party, however in good faith and shamefully deluded.

The contract, the guarantee, the notes, the testimony of Mr. Lallande, are all in evidence by the plaintiffs and conclude them.

They cannot pretend that the contract does not say that the advances were not made to C. W. Cary; that he was not their debtor; that he was not a third party; that Richardson & Cary were not sureties on the notes and on the contract, to the end that *his* liabilities to them, to that extent, would be faithfully met. The fact that the check was made to the order of Richardson & Cary, does not show that the consideration of the notes was given to them for their benefit and enured to their advantage; for, the only capacities in which they can be deemed to have acted in, with reference to the matters, are those of merchants of C. W. Cary, for whose account they had negotiated, and of securities of his engagements as set forth in the contract and the notes mentioned in it.

The plaintiffs cannot say that they did not know that the partnership between Richardson & Cary was not in existence at the dates of the notes, which appear to have been issued some six months prior to the announcement of the formation of the partnership in the city papers on the 12th of March, 1879. If the partnership was not in existence at the date of the notes, how could they have been properly made to the order of Richardson & Cary? This was a circumstance well calculated to arouse suspicion and to put plaintiffs on their guard and on inquiry.

It is shown that they prudently and safely inquired into the financial condition of the firm. Informed by the unusual character of the last approach, of the offers and doings of Cary, it would have been quite easy for them to have proceeded to 31 Magazine street, the place of business of the concern, and there ascertained from the only other partner, Mr. Richardson, whether Cary had his assent for the proposed use of the name of the firm for the *guarantee* of the obligations of W. C. Cary, the alleged drawer of the notes and obligor on the contract mentioning the notes.

It is the duty of every one who deals with a member of a commercial partnership who apparently transcends his mandates and powers, to require evidence of his authority to bind his co-partners, and this at his risk and peril.

The plaintiffs cannot say that they were authorized, under the circumstances, to believe with certainty of correctness, that G. W. Cary was acting in the course of the business of the partnership within the

·range of his powers as partner, in a matter connected with the affairs of the partnership, or with the authority of the other partner, for, the notice of the formation of the partnership published in the papers, as said and proved, distinctly announced that the partnership was formed " *for the purpose of doing a general dry goods and notion business* " and gave the address of the place where the business was to be carried on that third parties might be better informed.

The acts and doings of G. W. Cary, in the name of the firm of Richardson & Cary, could not be considered as accomplished for the purpose of doing a general dry goods and notion business. The transaction was unusual. It would have been easy for the plaintiff to have inquired. It was their duty to have done so. For their omission, in the matter, John P. Richardson cannot be made gratuitously to suffer.

There is no evidence that the amount of the check was received by and enured to the benefit of the firm. Testimony was adduced to the contrary. Neither is it proved that Mr. Richardson either knew of the transactions, consented thereto, or ratified the same.

The authorities relied upon by the plaintiffs are undoubtedly correct, but they can afford no relief in a case like the one at bar to the plaintiffs. 2 Wall. 110; Daniel, N. J. 83, 359; Byles on Bills, 166; Edwards, 150; Bayley, 21; Story, 37; 11 M. 427; 4 Rob. 193; 22 How, 266; 5 Pet. 529; 4 Metc. 577; 18 Penn. 408; 16 Wend. 505.

The rule of law is that, where a partner, acting apparently beyond the limits of his authority, untruly states his partner's consent, his representations will not bind them, even in favor of parties who may have acted in good faith. 12 Pet. 221; 3 Kent Com. Sec. 43; 4 Exch. 622; 1 Wend. 529; ex parte Agare, 2 Cox, 312; 37 Cal. 113; 10 An. 107, 783; 394; 2 Mart. 183; 7 M. 364; 10 M. 18.

The rule of law is also that one partner cannot without the assent of his co-partners, give a security, in the partnership name, for the payment of his individual debt; nor can he, without such assent, lend the name of the firm as surety, endorser or guarantor for a third person. 2 Ala. 502; 1 Ala. 565; 12 Peters, 221; 4 Ech. 623; Parsons, vol. 1, p. 184, 221, 228; Story, Sec. 128; Chitty, 48; 6 B. Monroe, 60; 4 Wend. 168; Daniels, 1, p. 276; Collyer, 490; 28 An. 941. See, also, Mechanics' and Traders' Co. vs. Richardson & Cary; Mut'l N. B. vs J. P. Richardson, 33 An. p. —— and ——; and authorities there quoted. We, therefore, conclude that Richardson is not liable.

It is, therefore, ordered and decreed that the judgment of the lower court in so far as it condemns Richardson to pay plaintiffs any amount, be reversed, and that, in so far as it relieves him from responsibility to the plaintiffs, it be affirmed, and proceeding to render such judgment. as said court should have rendered,

It is ordered, adjudged and decreed that plaintiffs' demand be rejected, with judgment in favor of the defendants, at the costs of plaintiffs in both courts.

Mr. Justice FENNER recuses himself, having been consulted as counsel.

Rehearing refused.