BREAUX, C. J.
Plaintiff brought this suit to recover $5,748.58 from the defendant, an amount paid without consideration. Plaintiff is a manufacturer of lumber, and buys timber for supplying its mill. On the 18th day of April, 1903, it entered into a written contract with G. E. Montgomery, of the firm of Montgomery-Eerguson & Co., who assumed to act for the firm, whereby he sought to bind the firm to sell to plaintiff 2,230 acres of land, known as the Barbe land, for the sum of $7,000. After this agreement had been entered into between plaintiff and G. E. Montgomery, plaintiff executed 10 promissory notes of $700 each, dated the 16th day of April, 1903; one due in 60 days thereafter; the others, in equal installments in 9 annual payments, drawn to the order of plaintiff, and by it indorsed in blank. These notes were delivered by plaintiff to G. E. Montgomery, who assumed to act for the firm of Montgomery-Ferguson & Co., as just stated.
The understanding at the time was that these notes were to be returned to plaintiff, in the event that the seller could not make title to the land above mentioned. As defendant could not make title to the land, plaintiff called for the return of the notes, and asked that the contract be annulled. This could not be complied with by Montgomery; for he had pledged and delivered the notes to Wm. T. Hardie & Co., commission merchants of New Orleans, in order to secure his own indebtedness to Hardie & Co. It appears that plaintiff paid $5,748.58 to recover these notes.
The commercial firm was composed of Montgomery, Ferguson and others, and continued its existence during the years 1903 and 1904. The main business of the partnership was the planting of cotton, and, in order to operate their place, they borrowed from Wm. T. Hardie & Co.
' The firm denies that the partnership ever bound itself to sell lands to the Victoria Lumber Company, and alleged that G. E. Montgomery, whose name is signed to the contract sued on, had no power to bind the partnership in any way. The further contention on the part of these defendants is that they had no knowledge that these notes were given or had been pledged and delivered to Hardie & Co., until they were sued; and that whatever notes were given in the name of the partnership to Hardie & Co. were given without authority, and were a forgery. Defendants deny that Hardie & Co. had the right to credit their account with the proceeds of these notes; for the partnership owed them nothing after the fall of 1903. It is also stated on the part of the defendants that the name of Montgomery-Ferguson & Co. does not appear on the contract in question.
The testimony is conflicting. .There is no question, however, that the amount of $5,-003.81 was a balance due by G. E. Montgomery to Hardie & Co., and that this indebtedness was treated and considered as if an indebtedness of the firm of Montgomery-Ferguson & Co. by Wm. T. Hardie & Co.; but, according to the weight of the testimony, G. E. Montgomery had no authority to secure his indebtedness of $5,003.81 in the manner that he attempted. It is proven that he did not have the least authority to thus transact in the name of the firm of which he was a partner at the time.
In addition to executing his note in the name of the firm, which he left with Hardie & Co. to represent an asserted indebtedness of the firm, he entered into an agreement with Hardie & Co. to ship 800 bales of cotton to them, or, if he failed in shipping that number of bales, then to pay a stated commission. In this, also, he does not appear to have had the authorization of the firm. In fact, the managing partner was J. L. Ferguson, who held the power to transact business for the firm, and not Montgomery.
*123 Prom tile proceeds of tlie shipments of cotton made by Montgomery-Ferguson & Co. to Hardie & Co., the latter satisfied the note in their hands of $5,003.81, and canceled it. They never advised Montgomery-Perguson & Co. that they had applied that much of the proceeds of the cotton to the satisfaction of the said indebtedness of Montgomery. After Montgomery’s note had been satisfied, as just mentioned, Hardie & Co. did not send it to the firm of Montgomery-Ferguson & Co., but sent it canceled, with the statement, to G. E. Montgomery. The evidence of the two partners of Hardie & Co. is that they thus returned the note to Montgomery personally, because they took it for granted that he was fully authorized by the partnership.
Another note of $5,000 figures in the transaction. One of G. E. Montgomery’s contentions was that the firm of Montgomery-Perguson & Oo. owed him individually over and above the amount of his indebtedness to Hardie & Oo. This is denied by all the members of his firm, who said emphatically that the firm owed him nothing.
The Victoria Lumber Company aver that Montgomery-Ferguson & Co. were without title or interest in or to any of the notes issued by the said company, as they issued them without consideration, and were wrongfully and tortiously pledged to Win. T. Hardie & Co.; and their contention is that Montgomery-Ferguson & Co. is without right to the remaining notes. Montgomery-Ferguson & Co.’s contention is that they have no concern in these notes; that they had naught to do with the transaction between John R. Jones, representing the Victoria Lumber Company, and G. E. Montgomery, nor with the transaction between Montgomery and the firm of Wm. T. Hardie & Co.
Judgment was rendered in favor of defendant, rejecting plaintiff’s demand, and from this judgment the plaintiff appealed.
[2] We have before noted that plaintiff issued notes,'negotiable in form, and placed them in the hands of G. E. Montgomery, who was without authority to receive them for the firm of Montgomery-Ferguson & Co.; and that these notes were issued upon the mere promise of Montgomery to transfer lands in satisfaction therefor. ■ These notes, having passed into the hands of a third person without notice, were treated as the notes of the holder. Plaintiff’s contention now is that the proceeds realized from these notes were used for the benefit of the firm of Montgomery-Ferguson & Co.; and that, having been so used, the defendant should be condemned to pay them to plaintiff.
The position would be entirely correct if it were sustained by the facts. The proof is that Hardie & Co. appropriated the proceeds of the cotton of Montgomery-Ferguson & Co. to' pay the individual note of Montgomery; and that this was done without the authority of the firm. This leaves no ground upon which to base the claim that the defendant has been benefited.
It seems that the firm of Hardie & Co. Is still indebted to the firm of Montgomery-Ferguson & Co. In easting the account between these two, Hardie & Co. and Montgomery-Ferguson & Co., the latter are entitled to the proceeds of the cotton thus appropriated, and when that is taken into account it is not made to appear that they have been benefited by Montgomery’s personal transaction. Whatever amount of the-notes he pledged, and which, on the face of the notes, he had a right to pledge, went to the benefit of the defendant toward paying the amount which had been illegally appropriated, and cannot be recalled. It is a complete transaction which binds all parties concerned. Things cannot be undone now so as to return an amount, applied as before mentioned, to plaintiff. The firm of Hardie & Co., were, to all appearances, influenced by the fact that these notes were *125 transferable by delivery; for one of tbe firm, Mr. W. T. Hardie, testified tbat they did not know whether these notes belonged to Montgomery individually, or to the firm with which he was connected. It devolved upon plaintiff to prove the benefit which it alleged the defendant received in the transaction.
Now, as relates to the land which Montgomery had promised to transfer to the Victoria Lumber Company, he had no authority from the firm to involve it in a land and timber speculation. The firm did not own the land, the Barbe tract, which Montgomery had promised to transfer; and therefore it was out of his power to transfer it as he had promised to do. The partners, other than Montgomery, knew nothing about the promise to transfer land, or about the notes executed by plaintiff and pledged, as before mentioned. The firm owed nothing to Montgomery. The latter had no authority to receive notes from the Victoria Lumber Company, as he was not the manager and representative of the firm of Montgomers'-Ferguson & Co. The notes were not a source of benefit to the defendant partnership; for in the settlement they did not receive as much as they were entitled to from the firm of Hardie & Co. Montgomery pledged the notes as a member of the firm of Montgomery-Ferguson & Co.; but the $5,-003.81 was a balance due by G. E. Montgomery individually.
The methods of G. E. Montgomery as a business man have not always been of the best, and this was known to plaintiff. Plaintiff’s representative testified that he thought he had changed, and his manner of doing business had become more regular. The fact remains that these parties transacted with him without the least regard for the firm, with which they never took the trouble to enter into communication. They assumed more than they should have. In regard to the promise to transfer the land, they seem to have been somewhat indifferent. At any rate, they so acted as to render it impossible now to consider the defendant partnership liable.
[1] In the transaction with Hardie & Co., we have not found that the business was conducted in such a way as to inform the parties concerned of what was done. Amounts were appropriated to the satisfaction of debts which were individual debts, to the knowledge, it seems, of those with whom the transactions were entered into. When the acts of a partner are evidently beyond the limits of his authority,' third persons must ascertain at their risk whether he has the assent of his partners. Allen, Nugent & Co. v. Cary et al., 33 La. Ann. 1455. There was no attempt whatever made in that direction, and too much was taken for granted from the first.
There is only one alternative left to us; it is to affirm the judgment. It is therefore ordered, adjudged, and decreed that the judgment appealed from is affirmed, at appellant’s costs.
PROVOSTY, J., takes no part, not having heard the argument.