## Case No. 8,240.

### LEMOINE v. BANK OF NORTH AMERICA.

[3 Dill. 44;[1] 7 Chi. Leg. News, 18; 20 Int. Rev. Rec. 153; 1 Cent. Law J. 529; 22 Pittsb. Leg. J. 47.]

Circuit Court, E. D. Missouri. Sept. Term, 1874.

ACCOMMODATION INDORSEMENTS BY PARTNERSHIPS —POWER OF PARTNER—NOTICE.

1. If the maker of an indorsed note carries it to a bank for discount on his own account, this is notice to the bank that the indorsement thereon appearing is an accommodation indorsement. Such is the presumption of law if there is nothing in the transaction to repel it.

[Cited in Third Nat. Bank v. Harrison, 10 Fed. 252.]

[Cited in National Park Bank v. German-American Mut. Warehouse & Security Co., 116 N. Y. 293, 22 N. E. 567.]

2. If such indorsement be that of a firm, the bank discounting the note under such circumstances must, at its peril, ascertain whether there was any special authority, express or implied, for one partner to sign the partnership name as an accommodation indorser.

[Cited in West St. Louis Sav. Bank v. Shawnee County Bank, Case No. 17,462.]

[Cited in Hendrie v. Berkowitz, 37 Cal. 113; National Bank of Commonwealth v. Law, 127 Mass. 75.]

[Appeal from the district court of the United States for the Eastern district of Missouri.]

This is a contest between the Bank of North America, of St. Louis, and [J. B. S. Lemoine] the assignee of Earickson & Boyd, bankrupts, respecting the liability of that firm on the indorsement of the name of the firm upon two promissory notes. A copy of one of these notes is as follows: "St. Louis, June 11, 1873. Sixty days after date we promise to pay to the order of Earickson & Boyd thirty-five hundred dollars, &c., at the Bank of North America, St. Louis, Mo. (Signed) White Brothers." Indorsed: "Earickson & Boyd." The other note is for $2,500, dated June 17, 1873, at sixty days, with the same names as makers and indorsers as the note above copied. From the evidence before it the district court found that the bank was entitled to have the amount of the two notes [$6,000 in all][2] allowed against the firm assets. [Case unreported.]

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]
[2] [From 7 Chi. Leg. News, 18.]

The assignee appealed under the eighth section of the bankrupt act [of 1867 (14 Stat. 520)], and in this court new pleadings were filed as in an action at law by the bank upon the indorsement. The question is whether the indorsement is binding upon the firm in favor of the bank. From the evidence the court below found the facts to be as follows:

### Special Finding of Facts by the Court.

On the first day of January, 1873, the bankrupts, John K. Earickson and J. Will Boyd, formed a partnership under the firm name of Earickson & Boyd, and by articles of co-partnership both partners were prohibited from signing the firm name for the security or accommodation of third parties, and it was further stipulated that Earickson should have exclusive charge of the tobacco factory of the firm, and Boyd exclusive charge of the office and finances. The firm did not need, nor did they obtain any accommodation or borrow any money, except on drafts drawn against their sales of tobacco, which they sometimes discounted in bank. The Bank of North America had no knowledge or notice whatsoever of any of the above facts. The firm of Earickson & Boyd failed about the first of July, 1873, owing about sixty thousand dollars, of which amount only about thirty-five hundred dollars was legitimate indebtedness; the residue of the indebtedness having been created by Earickson, without Boyd's knowledge or consent, by using the firm name on commercial paper for his, Earickson's, private benefit, or by indorsing for White Bros., a firm not connected in any way with Earickson & Boyd. White Bros. were also accommodation indorsers on paper drawn in the name of Earickson & Boyd, by Earickson, and the firm received no benefit therefrom; on the contrary this was done without Boyd's knowledge or consent. The only circumstance coming to the knowledge of Boyd calculated to arouse his suspicions of his partner's wrong doings happened in March, 1873, when two or three bank notices came into their office, and knowing the firm had no paper out, he charged Earickson with having used the firm's name for his own private purposes. Earickson admitted he had done so in that instance, declared he had not in any other and would not again, that he had ample means to take up that paper and would do so. Boyd told him if that occurred again he would dissolve the firm. Earickson took up that paper and Boyd knew of no other paper having been given until after the failure of White Bros. on the 30th of June, 1873. Of these facts, however, the bank had no knowledge whatever. The notes upon which the claim is founded were made by White Bros. payable to the order of Earickson & Boyd and indorsed with the firm name of Earickson & Boyd by Earickson but without the knowledge of Boyd. White, one of the firm of White Bros., met a director of the bank in the street on the way to the bank to attend a meeting of the board, handing him the note, told him there was a note he would like to have "done" for him. The director took the note and laid it before the board and it was discounted, some of the members of the board stating that they understood Earickson & Boyd were a very good and responsible firm; both notes were presented and discounted in the same manner and about their respective dates, but through different directors, the conversation with each being in substance the same, and in each case the proceeds were placed to the credit of Earickson & Boyd, and so entered on the books of the bank, according to the uniform custom of the bank, they being the last indorsers on the paper. The money was drawn from the bank on the checks of Earickson & Boyd, signed in the handwriting of Earickson, which checks were drawn to the order of White Bros. and indorsed by them.

These checks are as follows:

"St. Louis, June 11th, 1873. Bank of North America: Pay to White Brothers thirty-four hundred thirty-seven dollars and seventy-nine cents. $3,437.79. Earickson & Boyd." Indorsed: "White Brothers."

"St. Louis, June 17th, 1873. Bank of North America: Pay to White Brothers, proceeds discount, twenty-four hundred fifty-five dollars and fifty-five cents. Earickson & Boyd." Indorsed: "White Brothers."

The notes were duly protested, and due notice given of their non-payment. Boyd was ignorant of all these transactions nor does it appear that the bank had any knowledge of the connection or relations of the two firms of White Bros. and Earickson & Boyd, except what appears on the paper in question. In this court the counsel for the respective parties filed a stipulation that the case should be submitted to the court upon the above statement, which should be taken as an agreed statement of facts for all the purposes of this case.

J. G. Chandler, for the assignee.
John R. Shepley, for the bank.

DILLON, Circuit Judge. On the facts found by the district court, upon which, by stipulation, the cause is submitted to this court, it is to be taken as true that the notes in question were indorsed with the firm name of Earickson & Boyd solely for the accommodation of White Brothers, the makers, without any consideration to the indorsers therefor.

It is also to be taken as true that this indorsement of the firm name was made by Earickson, without the knowledge or consent of Boyd and against the express stipulation on this subject in their articles of co-partnership, and that the notes when thus indorsed were returned to the possession of

the makers, from whom the bank received them and at whose instance it discounted them, and who, through the checks of Earickson, drawn in the firm name, received the proceeds of the transaction. There is no finding or agreement that the indorsement of the firm name was made in accordance with any habit of dealing of the firm known to Boyd, or that there was with Boyd's knowledge such a course of dealing as respects accommodation indorsements in the firm name as to justify an inference of Earickson's authority to bind the firm in this manner.

I concede that in favor of third persons acting in good faith it is a presumption of law that notes indorsed in the name of the firm were indorsed on the partnership account, and hence the indorsement on the notes in question will bind the firm, unless it appears that the bank had notice that the indorsement was made outside of the partnership affairs. Story Notes, § 72; Byles, Bills, 47; Austin v. Vandermark, 4 Hill, 259, 262, per Nelson, C. J. But inasmuch as the settled rule of law is that it is not within the general scope of one partner to bind the firm by contracts of suretyship or to issue accommodation paper in the name of the firm for third persons, if the bank had notice that this was an accommodation indorsement, the burden of proof is upon it to show the assent of the other partners (either expressly or from the firm's course of dealing in this respect) or their subsequent ratification. Byles, Bills, 47, and cases cited in the notes. If, therefore, the bank discounted these notes without notice of the fact that the name of the firm had been indorsed upon them by one of the partners without the consent of the other and for the accommodation of the makers, it is entitled to hold the firm upon the indorsement, although in point of fact it was placed there by one of the partners in fraud of the rights of his co-partner, or without authority from him.

And the question on which the case turns is whether the bank had such notice, for it is not attempted to show that Earickson had authority from Boyd, express or implied, to make the indorsement. The bank is sought to be affected with such notice by virtue of the fact that after the notes bore the indorsement of the firm they were in the hands of the makers, who met one of the directors of the bank when on his way to a meeting of the board of directors, and giving him the notes asked him to have them discounted for the makers. It does not appear that the director informed the board of whom he had received the notes, but this is not material, for the learned counsel for the bank conceded on the argument that he supposed the law to be that the board or the bank would be chargeable with the knowledge of the director thus obtained.

Thus viewed, the real question in the case is reduced to this: Does the fact that the maker is in possession of a note before maturity, indorsed by another, affect the bank that receives it from the maker and discounts it for him, with the notice that it was indorsed for the maker's accommodation?

At the bar counsel stated that they had been unable to find any adjudged cases upon the exact point, and they argued it on general principles. In view of the nature of the notice required to defeat the rights of the holder for value of commercial paper, as settled by the supreme court of the United States in Goodman v. Simonds, 20 How. [61 U. S.] 343, I was at first impressed in favor of the bank; but subsequent reflection has brought me to an opposite conclusion. To make accommodation paper is so entirely extra the business of a co-partnership and the legitimate authority of a partner, that the presumption is against, and properly against, the power of one partner thus to bind his co-partners; for suretyship, it has been well remarked is "a contract which carries with it a lesion by its very nature." Louisiana State Bank v. Orleans Nav. Co., 3 La. Ann. 294. Therefore when a bank has knowledge that an indorsement of the name of a firm is an accommodation indorsement it is bound at its peril to ascertain whether the members of the firm on whom it intends to rely assented to this use of its name. This it can easily do. While on the other hand, if the bank were entitled to presume that the other members of the firm assented, the presumption would in many instances, as in the case before us, be contrary to the fact, and highly disastrous to innocent partners, who would be without the means of guarding against the fraudulent use of the co-partnership name in unauthorized transactions.

If the facts of the case as found by the district court be considered there can be little doubt that the bank knew the discount was for the benefit of White Brothers, and consequently that the indorsement of Earickson & Boyd was presumptively, as it was in fact, for the accommodation of the makers.

On examination I find several cases distinctly asserting this to be law, and have not met with any holding a different view. When a note not due is taken by the makers to a bank for discount for their account, with an indorsement thereon, the presumption, unless there is something in the transaction to rebut it, is that the indorsers are sureties for the maker, and that they did not indorse it in the ordinary course of business. Upon this subject Mr. Chancellor Walworth, in Stall v. Catskill Bank, 18 Wend. 478, holds this language: "If, therefore, it appears from the face of the paper that the partnership name is signed as surety for some other person, the party who takes the note from such person has actual notice of the fact that it is not signed in the ordinary course of partnership business. He

must, therefore, at his peril, make the necessary inquiries and ascertain that there is some special authority for one partner to sign the partnership name as such surety, express or implied. So if the drawer of a note carries it to the bank to get it discounted on his own account, or transfers it to a third person, with the name of the firm indorsed thereon, the transaction, on its face, shows that it is a mere accommodation indorsement, or the note would not be in the hands of the drawer; and the bank or person who thus receives it from the drawer being thus chargeable with the notice that the firm are mere sureties of the drawer, and that it has not passed through their hands in the ordinary course of partnership business, the members of the firm, who have been made sureties without their consent, are not liable to such holder of the note."

This language was quoted and approved by Mr. Chief Justice Sawyer in giving the judgment of the supreme court of California in Hendrie v. Berkowitz (1869) 37 Cal. 113, and in which the court distinctly held, in a case precisely like the one now before the court, that the presumption was that the indorsement was an accommodation indorsement, and that the burden of proving the consent of the member who did not write the indorsement is upon the holder. So, in Overton v. Hardin (1869) 6 Cold. 375, the supreme court of Tennessee said: "There can be no doubt that the possession of an indorsed note by the maker is presumptive evidence that it was indorsed for his accommodation. Edw. Bills, 103, 105; Brown v. Taber, 5 Wend. 566; Erwin v. Shaffer, 9 Ohio St. 43." In this last case Brinkerhoff, J., says: "That although an indorsed note in the hands of the maker after due is presumed to have performed its office, and to have been paid off and taken up by the maker, yet no such presumption arises in the case of such a note before due; but that on the contrary, in such case, it is a matter of legal presumption that the note is unsatisfied, and is indorsed and placed in the hands of the maker for his accommodation. Wallace v. Branch Bank of Mobile, 1 Ala. 565; Mauldin v. Branch Bank of Mobile, 2 Ala. 502; Stall v. Catskill Bank, 18 Wend. 478." See, also, language of Mr. Justice Nelson in Bank of Rochester v. Bowen, 7 Wend. 159; Byles, Bills, 47, and note.

The amount of the notes less the discount was, in accordance with a usage of the bank, placed to the credit of the last indorsers, in this case Earickson & Boyd, and was drawn out on the two checks of Earickson & Boyd, signed by Earickson, without the knowledge of Boyd, in favor of White Brothers. One of these checks showed on its face that it was for the proceeds of the note discounted, and the amount of each showed that it was for the note transactions. It is insisted that this makes the indorsement binding on both. This view rests upon the ground of ratification by Boyd; but the essential element of knowledge on his part, both of the fact of the indorsement and of the check being drawn, is wanting. The checks do not therefore change the rights of Boyd, or make binding upon him his partner's act in indorsing the firm's name to the notes in question. The district court erred in holding that the two notes were a claim upon the firm assets. The indorsement is alone binding upon Earickson. Judgment accordingly.

The court entered a judgment reversing the judgment below and entering a judgment against Earickson alone, and ordering a transcript thereof to be sent to the district court. Same principle applied: See West St. Louis Sav. Bank v. Shawnee County Bank [Case No. 17,462].