NATIONAL EXCHANGE BANK OF BOSTON *v.* WHITE and others.

*(Circuit Court, W. D. Michigan, S. D. 1887.)*

1. NEGOTIABLE INSTRUMENTS — UNAUTHORIZED INDORSEMENT — BONA FIDE HOLDER—BURDEN OF PROOF.

   Upon proof of the misapplication and unlawful use of notes by a partner in transferring them by indorsement, in contravention of the rights of the non-assenting members of his firm, the burden of proof is cast upon the indorsee of showing that he received them before maturity for a valuable consideration.

2. SAME—EXECUTION IN BLANK.

   Where notes are signed in blank, to be filled up, and this is done, so that, when they are indorsed to and discounted by a third party, they are complete in form, with no indications of any defect in their execution in his hands, they are valid securities, and unaffected by the circumstance that they were signed in blank. Such facts imply an authority to fill up the blank.

3. PARTNERSHIP—POWERS OF PARTNERS—FIRM PAPER—BONA FIDE HOLDER.

   Whenever a copartnership adopts and is engaged in a course of business in which the use of its commercial paper, such as these notes are, is appropriate and reasonably to be expected, or does in fact make use of it, with the common knowledge of the members of the firm, whenever the convenience or necessities of the firm may require, then the firm is liable upon commercial paper made in its name by one of its members to one who takes it *bona fide*, in the usual course of business, before maturity, and for a valuable consideration, notwithstanding any fraud of the partner making the paper, or misappropriation by him to other uses than those of his firm.

4. SAME—LIABILITY.

   Such liability is not restricted to the case of a trading copartnership, if by that term is intended one engaged in the business of buying and selling, though it would, as a rule, include such, but extends to all cases where the nature of the business fairly and reasonably implies such use as an appropriate incident thereto, or where the actual course of business pursued adopts the practice of issuing the mercantile paper of the firm to accommodate its necessities or convenience whenever the occasions occur, and such occasions do in fact occur, and are thus provided for.

5. SAME—PRESUMPTION OF AUTHORITY.

   If the making of mercantile paper of the firm by one of its members under any circumstances is permissible and consistent with the rights of the other members of the firm, the authority must be presumed in favor of a *bona fide* holder.

6. SAME—ARTICLES—EFFECT AS TO THIRD PARTIES.

   Conditions in articles of partnership restricting the authority of the partners, that are not known to third parties, cannot affect them, and the nature of the copartnership is to be determined by what it assumes to the public to be, and by its mode of doing business.

**7. TRIAL—DIRECTING VERDICT.**

> When the evidence upon an issue is uncontradicted, and no circumstances appear in the case to discredit it, and it appears to the court that a verdict contrary to this evidence could not be supported, an express direction should be given to the jury to find in accordance with such evidence.

At Law.   *Assumpsit.*

This action was brought by the plaintiff upon three promissory notes; the first bearing date October 17, 1882, payable at the plaintiff's bank in Boston in four months from date, and being for the sum of $5,288.75; the second bearing date November 27, 1882, payable at the same place, in four months from date, and being for the sum of $5,100.73; the third bearing date January 15, 1883, payable also at the same place, in four months from date, and being for the sum of $5,391.90. The notes were all made in the name of F. H. White & Co., to the order of Ferry & Bro., and were indorsed in the name of the latter firm.

It appeared from the evidence that the firm of F. H. White & Co. was composed of White, Dowling, and E. P. Ferry, and that T. W. Ferry and E. P. Ferry composed the firm of Ferry & Bro. The firm of F. H. White & Co. were engaged in the business of manufacturing lumber at Montague, Michigan, for various parties, quite extensively, and, among others, for Ferry & Bro., who were lumber dealers on a large scale, having their principal office at Grand Haven. These lines of business had been carried on by the respective firms for at least 10 years prior to the transactions of the giving, indorsing, and discounting of the notes in question. These notes were signed in blank by E. P. Ferry (then in the territory of Utah, and who was a common member of the two firms) in the name of F. H. White & Co., and by him transmitted to the office of Ferry & Bro., at Grand Haven, with intent on his part that they should be filled up and indorsed by Ferry & Bro. for discount at the plaintiff's bank. They were accordingly filled up in the handwriting of the wife of the clerk or book-keeper of Ferry & Bro., indorsed by that firm, sent to the plaintiff, and discounted by it. All this took place, in the case of each note, at about the date thereof. Neither White nor Dowling had any knowledge of these transactions at the time, and the first knowledge they had of them was when the first note matured, and was presented for payment at F. H. White & Co.'s place of business. Neither of them has at any time ratified the making of the notes, which were, as to their firm, purely accommodation paper.

White & Dowling are the sole parties who defend, and 'the ground of their defense is that their partner, Ferry, had no authority, express or implied, to make these notes in the name of their firm; that F. H. White & Co. was a non-trading firm; and that, from the nature of their business, the making of mercantile paper was not necessary, and that there had never been any holding out of a firm business which would justify the public in treating any member of the firm as having an implied authority to make negotiable paper in its name. The articles of copartnership were offered in evidence, and it appeared from them that the business proposed was the manufacture of lumber from logs for other parties. The management of the financial concerns of the firm was by

the articles committed to Dowling and Ferry. But it did not appear from any evidence that the plaintiff knew anything of these articles.

It appeared from the evidence of White and Dowling and the firm books that White & Co. employed about 30 men in and about their mill and business; that the extent of it was some $30,000 of earnings per year; that they kept a regular bank account with a bank at Whitehall, close by; that on several occasions the firm had made its notes to the bank, and had them discounted for the purpose of raising money, when needed to pay their men, and for supplies and repairs of machinery and the incidents of the business; and it also appears that at that bank, and at another bank at Muskegon, the firm paper had been discounted for the purpose of raising money to meet drafts drawn on the firm by E. P. Ferry for portions of the amount standing to his credit on the firm books, of which there was a considerable amount at the date of the first of the notes in suit. F. H. White & Co. had printed drafts or orders, in blank, on Ferry & Bro., of which it made frequent use in collecting amounts due White & Co. for sawing lumber for that firm. Sometimes these drafts were made payable to E. P. Ferry for the purpose of paying him for his dividends of profits, and for advances to White & Co. This course of business had been pursued by White & Co. for many years, and with the knowledge of all the members. The making and discounting of the firm paper was not very frequent, but was resorted to when an occasion required the use of money not then in hand. White and Dowling were the principal managers of the business of that firm.

The plaintiff proved that it received from Ferry & Bro. the notes in question, and discounted them at or near their respective dates, placing the proceeds thereof to the credit, upon the bank's books, of Ferry & Bro., who were then their customers, and against which Ferry & Bro. checked to meet obligations falling due at the bank. On one of these occasions, the second, the note was discounted and placed to Ferry & Bro.'s credit when there was an overdraft by that firm. On the other occasions the credits on the discounts met checks made by Ferry & Bro. to take up precisely the same sort of paper which had been discounted, but without the knowledge of White or Dowling. At the close of banking hours on the day the third note was discounted, there was standing to the credit of Ferry & Bro. on plaintiff's books about $1,200. There was no evidence to show any bad faith or negligence on the part of the plaintiff, or to show that anything done on its part was out of the usual course of business. There was no conflict in the evidence.

*Norris & Norris*, for plaintiff.

*M. Brown* and *J. C. Fitzgerald*, for defendant Dowling.

*T. J. O'Brien*, for defendants E. P. & T. W. Ferry.

*Smith, Nims, Hoyt & Erwin*, for defendant White.

The court, before charging the jury, in explanation of its views upon the law of the case, expressed its opinion as follows:

SEVERENS, J. The court is of opinion that upon proof of the misapplication and unlawful use of the notes sued on, in transferring them, by the indorsement of Ferry & Bro., to the plaintiff, in contravention

of the rights of the non-assenting members of the firm of F. H. White & Co., the burden of proof was cast upon the plaintiff of showing that it is a *bona fide* holder of the notes, and that it received them before maturity for a valuable consideration. *Smith* v. *Sac Co.*, 11 Wall. 139; *Stewart* v. *Lansing*, 104 U. S. 505. The plaintiff has offered evidence in support of that burden. That proof is not contradicted, and no circumstances appear in the case to discredit it; and it appears to the court that a verdict contrary to this evidence could not be supported, and that, therefore, an express direction from the court must be given to find in accordance with such uncontradicted testimony. *Orleans* v. *Platt*, 99 U. S. 676; *Improvement Co.* v. *Munson*, 14 Wall. 442; *Walbrun* v. *Babbitt*, 16 Wall. 577; *Arthur* v. *Morgan*, 112 U. S. 495, 5 Sup. Ct. Rep. 241; *County of Macon* v. *Shores*, 97 U. S. 272.

The notes appear to have been signed in blank, and delivered to Ferry & Bro. to be filled up; and this was done so that, when they were indorsed to and discounted by the plaintiff, they were in complete form, with no indications of any defect in their execution. This being so, the court holds that in the hands of the plaintiff they are valid securities, and unaffected by the circumstance that they were signed in blank. Such facts imply an authority to fill up the blank. *Michigan Bank* v. *Eldred*, 9 Wall. 544; *Goodman* v. *Simonds*, 20 How. 361.

The articles of copartnership of F. H. White & Co. were admitted as part of the cross-examination of the witness called to prove that copartnership, who testified that he had seen them. It not appearing that their contents were known to the plaintiff, it is not affected by the articles, and the nature of that copartnership is to be determined by what it assumed to the public to be, and by its mode of doing business. *Winship* v. *U. S. Bank*, 5 Pet. 529; *Michigan Bank* v. *Eldred*, 9 Wall. 544.

Whenever a copartnership adopts and is engaged in a course of business in which the use of its commercial paper, such as these notes are, is appropriate and reasonably to be expected, or does in fact make use of it, with the common knowledge of the members of the firm, whenever the convenience or necessities of the firm may require, then the firm is liable upon commercial paper made in its name by one of its members to one who takes it *bona fide*, in the usual course of business, before maturity, and for a valuable consideration, notwithstanding any fraud of the partner making the paper, or misappropriation by him to other uses than those of his firm. The court holds that such liability is not restricted to the case of a trading copartnership, if by that term is intended one engaged in the business of buying and selling, though it would, as a rule, include such, but extends to all cases where the nature of the business fairly and reasonably implies such use as an appropriate incident thereto, or where the actual course of business pursued adopts the practice of issuing the mercantile paper of the firm to accommodate its necessities or convenience whenever the occasions occur, and such occasions do in fact occur and are thus provided for. *Kimbro* v. *Bullitt*, 22 How. 256; *Irwin* v. *Williar*, 110 U. S. 499, 505, 4 Sup. Ct. Rep. 160; *Johnston* v. *Dutton*, 27 Ala. 245; *McGregor* v. *Cleveland*, 5 Wend. 475.

If the making of mercantile paper of the firm by one of its members under any circumstances is permissible, and consistent with the rights of the other members of the firm, the authority must be presumed in favor of a *bona fide* holder. *Gelpcke* v. *Dubuque*, 1 Wall. 175, 203, and cases there cited. Although *Gelpcke* v. *Dubuque* was an action upon municipal bonds, the principle there stated seems applicable, those things being changed which should be. It must be presumed that the defendants White and Dowling were cognizant of the matters which were evidenced by their partnership books, and of the transactions therein disclosed.

If the court were to submit to the jury in this case the question of fact whether the firm of F. H. White & Co. did so conduct its business as to impliedly authorize the making of firm paper by one of its members for any purpose, it would be its duty to instruct them that if they should give credit to the evidence of the defendants and their books, and the undisputed evidence from the bank-books at Whitehall, their verdict must be for the plaintiff. The court does not deem it proper to submit the question under such circumstances.

SEVERENS, J., (*charging jury.*) Regretting very much that these defendants White and Dowling, who alone make defense here, are in such a situation that they must suffer from the wrong-doing of their associate, the court is unable to relieve them without violating principles of law which are essential to the security of mercantile business, and violating also the rights of parties innocent of the wrong. As there is, in the opinoin of the court, no question of fact about which there is any conflict in the evidence, the court holds that, giving effect to the testimony, the plaintiff is entitled to a verdict, and you are instructed to find accordingly, against all the defendants. The amount due on the notes, according to the computation stated in your hearing, and as I understand not disputed, is $19,306.27, but upon the suggestion of the court of a doubt whether the amount of the last balance standing on the plaintiff's books to the credit of Ferry & Bro., being that of January 22, 1883, amounting to $1,226.51, which, with the interest, then was $1,514.82, ought not to be deducted, the plaintiff's counsel consents thereto, and this, according to the computation of counsel, leaves $17,791.45 as the amount for which the verdict should be rendered.

The jury rendered their verdict for the plaintiff accordingly.

---

The defendant Dowling moved for a new trial. That motion came on for hearing before JACKSON, C. J., and SEVERENS, D. J., and was argued by the counsel who tried the case.

JACKSON, J., orally delivered the opinion of the court, denying the motion upon substantially the same grounds as those stated in the opinion of the district judge at the trial.