(Circuit Court of Appeals. Fifth Circuit. December 11, 1906.)

No. 1,546.

1. PARTNERSHIP—TRADING PARTNERSHIP—AUTHORITY OF PARTNER—BORROWING MONEY.

In an ordinary trading partnership, a partner has implied authority to borrow money on the credit of the firm, to draw, and accept, make, and indorse bills of exchange and notes, in the name of the firm.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, §§ 241–255.]

2. BILLS AND NOTES—BONA FIDE PURCHASER—AUTHORITY OF MAKER.

Though a member of a trading partnership has no implied power to sign the firm name as an accommodation indorser of a note, yet, if he does so, his unauthorized act constitutes no defense to the firm as against a bona fide purchaser for value in due course; the paper being such as to be subject to the law merchant.

3. SAME—BONA FIDE PURCHASER—REQUISITES.

Where the holder of negotiable paper acquired it before maturity from another, who was apparently the owner, and gave a consideration there-

for, he obtained a good title, though he had knowledge of facts and circumstances that would cause him or a man of ordinary prudence to suspect that the person from whom he obtained it had no interest therein or authority to use it for his own benefit, and though by ordinary diligence he could have ascertained such facts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, § 869.]

4. SAME—NOTICE OF SURETYSHIP.

Where a note when presented to petitioner for discount was signed on its face by three persons, the fact that the name of a partnership subsequently adjudged a bankrupt appeared as the second signer was not notice to petitioner that the firm signed only as surety for the first signer.

5. SAME.

Where a series of notes discounted by petitioner were all signed by three persons, a partnership which subsequently became a bankrupt being the second signer, the notes on their face did not indicate a contract of suretyship by which the second signer on being compelled to pay the entire note did so to the extent of two-thirds thereof as surety for the others.

6. SAME—JOINT AND SEVERAL LIABILITY.

Where a series of notes were signed by three persons, the second signer being a firm which subsequently became a bankrupt, the firm's contract as principal was to pay the entire amount of the notes, and this was not changed by the fact that other signers had made the same promise.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, § 542.]

Appeal from the District Court of the United States for the Western District of Texas.

For opinion below, see 143 Fed. 553.

M. L. Crawford (W. I. Ford and W. L. Crawford, Jr., on the brief), for appellant.

C. A. Keller, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. The appellant presented to the referee in bankruptcy for allowance against the bankrupt firm of A. F. Hardie & Co. 12 notes for $2,500 each, aggregating $30,000. The claim was at first allowed. Afterwards, on motion of the appellee, it was disallowed by the referee and expunged from the list of claims. The appellant excepted to the disallowance of its claim, and presented to the district court its petition to review the decision of the referee. The district court affirmed the referee's decision, and the case is brought here by appeal. The 12 notes are all alike, except as to the date of maturity, and are in the following form:

"$2,500.00.   Dallas, Texas, February 16, 1905.   April 10, 1905, after date we promise to pay to the order of Spence and Leonard Hardie twenty-five hundred dollars, at Dallas, Texas, with interest from date until paid at six per cent per annum. If this note is not paid at maturity and is collected by suit or attorney, we further promise to pay ten per cent. additional on principal and Interest for attorney's fees.   Value received.

                                            "Hardie Rose Co.
                                              "(By A. F. Hardie, Pres.)
                                            "A. F. Hardie & Co.
                                            "A. F. Hardie."

The firm of A. F. Hardie & Co. was composed of A. F. Hardie, James M. Hardie, and Max Kaliski. It was a trading partnership,

engaged at the time the notes were made and negotiated in the pur-. chase and sale of merchandise at San Antonio, Tex. The notes in question were signed in the firm name in the handwriting of James M. Hardie. Each note was indorsed on the back as follows:

"Spence Hardie, Leonard A. Hardie. Notice and protest waived. Pay Union National Bank, Kansas City, Mo., or order, Swofford Bros. Dry Goods Co. By J. J. Swofford, Pt. Notice & protest waived. Spence Hardie, Leonard A. Hardie."

The Swofford Bros. Dry Goods Company had for a long time kept an account at the appellant bank, and the bank was in the habit of dis-. counting commercial paper for the company. On March 30, 1905, the bank discounted for the company the 12 notes in question, paying for them $30,206.80. This amount was placed in the bank to the credit of Swofford Bros. Dry Goods Company, and shortly afterwards checked out by it. It is not shown in the record how or from whom the Swofford Bros. Dry Goods Company received the notes, nor is it shown what hands they passed through before they came to the Swof-ford Bros. Dry Goods Company. The District Court found that no pro-ceeds of the notes ever came to the firm of A. F. Hardie & Co., and that Max Kaliski, who was an active member of the firm and who furnished a large part of its capital, received no benefit from the notes, and did not know of their execution.

It was clearly proved, and found as a fact by the referee and the · District Court, that the appellant bank purchased the notes, paying for them their full value in cash before their maturity, and that it had no notice of any infirmity in them, unless such infirmity is disclosed by the notes themselves. The sole question decided below, and to be decided here, is whether or not the appellant is an innocent purchaser without notice of the 12 notes. As they were purchased before maturity and full value paid for them, and as the bank had no notice of any extrinsic fact tending to show any infirmity in the notes, it must be held to be an innocent purchaser without notice, if the notes, in the form in which they appear, are prima facie legal and binding on the firm of A. F. Hardie & Co. The question to be considered, there-fore, relates to the form of the notes. Do they convey notice to the, purchaser that the transaction was not one in the usual and ordinary course of borrowing money or of other business for the benefit of the partnership? It was contended by the appellee, and held by the lower court, that "the name of the Hardie-Rose Company appearing as the first joint maker on the face of the notes, with the partnership name of A. F. Hardie & Co. immediately following, imparted notice to third parties that the transaction was not one in the usual and ordinary course of business," and that the notes, therefore, showed on their face that they did not prima facie bind the partnership. It is assert-ed in the briefs of counsel, and in the opinion of the trial court, that no case has been found decisive of the precise question.

It is elementary that the liability of partners, as such, depends upon the principle of agency; that any contract made by a partner for the partnership, within the actual scope of the agency, is binding upon the firm; that in an ordinary trading partnership a partner has implied

authority to borrow money on the credit of the firm, to ,draw and accept, make, and indorse bills of exchange and promissory notes in the name of the firm; and that, even when the partner exercising such power abuses his trust for his own pecuniary advantage and to the injury of his firm, his copartners will be bound, unless the other party to the contract is chargeable with notice of the facts. It is well settled, however, that the power of a partner, implied from the contract of partnership, to act as agent for his copartners and to bind them by contracts in the firm name, is limited to transactions within the scope of the partnership business. Applying this limitation, it has been held that the power is not implied to sign the firm name as an accommodation indorser (Lemoine v. Bank of North America, 3 Dill. 44, Fed. Cas. No. 8,240), nor to make contracts of guaranty or suretyship. Bank v. Alden, 129 U. S., 372, 9 Sup. Ct. 332, 32 L. Ed. 725; Foot v. Sabin, 19 Johns. (N. Y.) 154, 10 Am. Dec. 208; Mauldin v. Bank, 2 Ala. 502; Brettel v. Williams, 4 Exch. (W. H. & G.) 623. But where such unauthorized contract is made, if the paper is of such a character as to be subject to the law merchant, an innocent indorsee acquiring it in the usual course of trade for value and before maturity can maintain an action against the partnership. Kimbro v. Bul'itt, 22 How. 256, 16 L. Ed. 313; National Exchange Bank v. White (C. C.) 30 Fed. 412; 1 Daniel's Negotiable Instruments (5th Ed.) § 368, and cases there cited. The statement of these principles shows that the correct decision of the case at bar turns on the question as to whether or not the appellant is an innocent purchaser.

There are conflicting decisions of the state courts on what is sufficient to put the purchaser of negotiable paper on notice of facts that deprive him of the character of an innocent purchaser. Here we are, of course, governed by the law as settled by the federal courts. It is held by this court, speaking by Pardee, Circuit Judge, that since the leading case of Goodman v. Simonds, 20 How. 343, 15 L. Ed. 934, one who acquires mercantile paper before maturity from another who is apparently the owner, giving a consideration for it, obtains a good title, though he may know facts and circumstances that would cause him to suspect, or would cause one of ordinary prudence to suspect, that the person from whom he obtained it had no interest in, or authority to use it for his own benefit, and though by ordinary diligence he could have ascertained those facts. Bank of Edgefie'd v. F. C. M. Co., 52 Fed. 98, 2 C. C. A. 637, 18 L. R. A. 201; Swift v. Smith, 102 U. S. 442, 26 L. Ed. 193. In Magee v. Badger, 34 N. Y. 247, 249, 90 Am. Dec. 691, the court held that the purchaser of negotiable paper "is not bound, at his peril, to be upon the alert for circumstances which might possibly excite the suspicions of wary vigilance. He does not owe to the party who puts negotiable paper afloat the duty of active inquiry to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence." This case is cited approvingly in Brown v. Spofford, 95 U. S. 474, 478, 24 L. Ed. 508. It is not, therefore, a question as to whether the notes on their face would excite the suspicion of the vigilant, or wheth-

er the appellant was negligent in not making inquiries as to the authority of the signing partner to bind the firm by the making of the notes; but the question is: Do the notes, on their face, show an illegal and unauthorized use of the partnership name and credit?

In Gelpcke v. City of Dubuque, 1 Wall. 175, 203 (17 L. Ed. 520), the court said:

"When a corporation has power, under any circumstances, to issue negotiable securities, the bona fide holder has a right to presume they were issued under the circumstances which give the requisite authority, and they are no more liable to be impeached for any infirmity in the hands of such a holder than any other commercial paper."

The principle announced seems to us equally applicable to the negotiable notes of a partnership. If a trading partnership, under any circumstances, has the implied right and power to make promissory notes of the kind and in the form in proof, one to whom they are offered in the market has a right to presume that they were issued under the circumstances which gave the requisite authority. National Exchange Bank v. White (C. C.) 30 Fed. 412, 416; 1 Bates on Partnership, § 352.

The alleged inherent defect that, it is claimed, imparted notice of the illegality of the notes as a partnership transaction, that is first urged, is that the name of the Hardie-Rose Company appears as the first joint maker, and that the name of the partnership, A. F. Hardie & Co., immediately follows. The idea is that the partnership, being the second signer of the note, must be the surety of the first signer. There is no question about the authority of a partner in a trading firm having the authority to use the firm name to raise money on the partnership's negotiable paper. There is no doubt, so far as the objection now considered is concerned, about his having the right to accept others as the sureties of the firm on such note. It follows that, if the notes in question were signed by A. F. Hardie & Co. only, their validity would be unquestionable; or if they were made by A. F. Hardie & Co. as principal, and the other two joint makers as sureties, they would not be subject to the objection now considered. What, then, is the alleged infirmity which is so potent as to carry notice? It is simply the fact that of the three names that of the partnership is second. This can be an infirmity only upon the hypothesis that a presumption arises that the first signer of a joint note is principal and the others are sureties. No authority is cited showing that such presumption arises from the order in which the signatures are attached to a joint note. In Summerhill v. Tapp, 52 Ala. 227, it was held, Brickell, C. J., speaking for the court, that the fact that the name of one of several makers of a note was first in the order of signatures did not cause the "presumption of suretyship" to arise. On the contrary, the court held that "all who sign a promissory note, joint, or joint and several on its face, are esteemed joint, or joint and several promissors, unless the note expresses that they bear another relation." In Paul v. Berry, 78 Ill. 158, 160, the court said:

"As between the makers, there arises no presumption simply from the note or the judgment that the first signer, or any other number less than the whole,

is, or are to be treated as principal or principals, and the others as co-sureties, but it. rests in evidence, to be introduced aliunde the note and judgment, to determine what relation they sustain towards each other."

Brandt says (1 Brandt on Suretyship & Guaranty, § 33):

"Where several persons execute a promissory note and there is nothing on its face to show their relations to each other, there is no presumption from the order in which they sign that any, or which, of the signers are sureties."

Where the words of a note show it to be a joint obligation, and it contains no word to the contrary, and it is signed by several makers, two, three, or ten, there is nothing in the mere order of signing which creates any presumption of suretyship. Where there are three joint makers, as in this case, it would be just as reasonable to presume that the first two were principals and that the third was a surety as it is to presume that the first one is the only principal and the second and third are sureties. If we once abandon the words of the contract and resort to presumptions based on the order in which the makers' names are affixed to the note, we would find difficulty in applying the doctrine to notes signed by varying numbers of makers.

In cases where evidence is admissible to show that a joint maker was in fact a surety, it would be admissible without regard to whether the alleged surety was the first, second, or third signer; but no question as to other evidence than the notes themselves arises in this case.

The learned attorney for the appellee argues that the fact that the attorneys for neither party have been able to find a single decision in which it was held that a member of a firm has a right to sign a joint note with others and to bind his partners is "incontrovertible evidence that such a transaction is unusual and beyond the ordinary scope of the partnership business." The want of authority on the exact point probably does not come from the fact that partnerships do not join others in making negotiable joint, or joint and several obligations, but it springs rather from the fact that those engaged in mercantile business and litigation are of the opinion that the right of a partner in a trading partnership to execute negotiable paper is not limited to instruments in which he, for his firm, is the sole maker or drawer. Many cases, we think, may be found in which the partnership is sued on such joint paper; no question being raised as to its having any infirmity on its face. Faler v. Jordan, 44 Miss. 283, was a suit on a note made by Daniel McLaurin, W. I. Draughn, and the firm of Faler, McLaurin & Co. A copy of the note is not given in the report of the case, but it appears clearly that the firm of Faler, McLaurin & Co. was the last of the three signers. The partnership was composed of Cornelius McLaurin and Faler. Neither of the first two signers of the note were members of the firm. Faler, a member of the firm, which firm was the third signer, interposed the defense that he did not sign the note, or authorize another to do so for him, but that the same was signed by some person to bind the firm of Faler & McLaurin as sureties for Daniel McLaurin, without his knowledge or consent. There was no suggestion made in the case that the partnership could not be legally bound by a joint, or a joint and several, note. The court said, citing as authority Winship v. Bank, 5 Pet. 529, 8 L. Ed. 216, that "the pow-

er of each partner to put the name of the firm to negotiable paper, is so essential to the conducting of its business that it is implied from the very existence of the firm"; and the learned court added, speaking, it must be remembered, of a joint promissory note in which the partnership which was sought to be charged was the third signer:

"Whenever a partnership name appears on commercial paper, the firm is prima facie bound, and the onus is on the firm and each member to show that it or he is not liable."

In Van Tine v. Crane, 1 Wend. (N. Y.) 524, suit was brought by the plaintiff as the indorsee of a promissory note made by the partnership of Crane & Platt and one Robert F. Van Tine. The note was joint and several. The suit was brought against the partnership alone, which plead in abatement the nonjoinder of the other maker. The court, in deciding the case, said:

"The note, having been signed by one of the partners in the partnership name, was the note of the firm, and not of the individuals composing it, so far as the remedy to enforce payment was concerned."

There is no hint in the case that the firm could not join in a joint and several note that bound the firm to pay the whole amount of the note. A joint and several note, signed by a partnership and three other makers of the note, was held valid and binding on the partnership for the entire amount of the note in Re Holbrook, 2 Lowell, 259, Fed. Cas. No. 6,588. It is true that in that case the evidence, aliunde the note, showed that the last three signers were sureties, but there is no intimation in the case that the note on its face showed any infirmity arising from the want of power of a partnership to make a joint note.

If the inhibition against joint promissory notes by partnerships is to prevail, the principle would also be applicable to bills of exchange. While the drawer of a bill of exchange is generally a single person, copartnership, or corporation, yet two or more persons may unite in drawing a bill. In such case they become, of course, joint obligors. A person uniting with a drawer or drawers could do so as a surety, and such person is called a "surety drawer." 1 Daniel on Negotiable Instruments (5th Ed.) § 95, and cases there cited. If the principle contended for by the appellee were established as to promissory notes, it would be equally applicable to bills of exchange. It would follow that a partnership could not become a joint drawer of a bill of exchange, and in the event it became a second signer of a bill of exchange the presumption would arise that it was surety for the first signer, and the bill would be, prima facie, not binding on the partnership. This view could not be reconciled with the decision of the Supreme Court in Kimbro v. Bullitt, 22 How. 256, 16 L. Ed. 313. In that case a member of a firm, which, acting by another partner, was a joint drawer and second signer of a bill of exchange, was held liable at the suit of the drawees and acceptors, who paid the bill. It appears in the opinion that the bills were drawn by Morgan McAfee and the firm of Dement, Kimbro & Sons, addressed to Bullitt, Miller & Co. The bills were accepted and paid by the drawees, and suit was brought by them against Kimbro, a member of the firm of Dement, Kimbro.

& Sons. Kimbro defended upon the ground that the principal acting partner of his firm had no power to draw the bills sued on. It did not seem to occur to court or counsel that the firm had no power to become a joint obligor with Morgan McAfee as drawers of the bill, nor that the firm was to be presumed to be the surety of Morgan McAfee, the first drawer, or the drawer whose name was first signed. The court affirmed the judgment of the Circuit Court against Kimbro, holding that a partner in a trading firm has a right, without the consent of his associates, to draw bills of exchange, and that the right of the acceptors who had paid the money to recover from the drawers could not be affected by the fact that one of the drawers had applied the money to an unlawful purpose. If it had been the law that a second signer of a joint bill is to be presumed to be a surety, or that a partner had no right, prima facie, to bind his firm in a joint bill, we cannot believe that these defenses would have been disregarded by the court and counsel.

The learned attorney for the appellee insists that, if these notes do not show that A. F. Hardie & Co. was surety for the whole $30,000, they certainly do show that it was surety for two-thirds of the amount of the notes. The contention is that, treating the notes as joint notes of the three makers, the presumption is that each of the makers received only one-third of the consideration, to wit, $10,000, and that the partnership of A. H. Hardie & Co. therefore became the security of the other two makers for $20,000. The idea is that, as each maker is jointly bound for the whole note, if the first and third signers fail to contribute to the payment of the debt, the second signer, A. F. Hardie & Co., would have to pay all, and that, therefore, the firm is at least security for the other two signers for two-thirds of the debt, and that it follows that the paper comes within the rule against the firm name being used as surety by a partner without the consent of his copartners. This argument, while seemingly sound, avoids the real question. It may be true that a joint note, or a joint and several note, contains, as between the makers, some of the elements of suretyship, in that, if one should fail to pay, another may be required to pay more, or that one, paying all, may require contribution from the others. But such consequences come from occurrences subsequent to the making of the note, and are based on relations between the parties that would have to be shown by evidence other than the notes themselves. No contract of suretyship appears in the note. As between the makers and the payees, there is no element of a contract of suretyship. The payees, or their indorsees, can look to all equally for payment, and the debt is the debt of all. In the case of a joint and several note, any one maker, at common law, could be sued alone for the entire debt. The joint and several note, though written on one piece of paper, is held by the law to be several notes—the separate note of each maker and the joint note of all. 1 Daniel on Negotiable Instruments, § 94. In the jurisdiction where the notes in question were made and were payable, although they are joint and not several in terms, any one of the makers could be sued alone for the entire debt. Rev. St. Texas 1895, § 1203. The notes on their

face do not constitute an agreement by A. F. Hardie & Co. as principal to pay one-third, and as surety to pay two-thirds, if the two joint makers fail to contribute to their payment. The firm's contract is, as principal, to pay the entire amount of the note. The fact that others make the same promise does not alter the contract of A. F. Hardie & Co. The inhibition against one partner's binding the firm as surety is not an inhibition against making any contract out of which may arise some of the consequences, remedies, or liabilities usually relating to a contract of suretyship. A partner may assign, or indorse, in the firm name, a negotiable note owned by and payable to the firm. If the maker should not pay it, the firm would be liable to the indorsee; and in that way the firm would become, in a sense, the surety of the makers. It would be secondarily liable on the paper; the makers failing to pay it. Stearns on Suretyship, § 121, p. 191.

In Gano v. Samuel, 14 Ohio, 593, it was held that one partner, for the benefit of his firm, in order to raise money for the firm, could use the partnership name in accepting a bill of exchange to be exchanged for the acceptance of another firm; it being in substance but the giving the name of the partnership to secure an indorser. And in Morris v. Maddox (Ga.) 25 S. E. 487, it was held that a member of a mercantile partnership, to raise money for the firm, has the power to exchange the promissory note of the partnership for the promissory note of another of like amount, the proceeds of which are intended for use in the partnership business. In both of these cases, the partnership assumed liabilities, to say the least, that were analogous to that of suretyship.

The conclusion we have reached in this case is, of course, not dependent upon the correctness of the judgments of the learned courts in the last two cases we have cited.

The second objection to the notes which we have just considered—that they show on their face that A. F. Hardie & Co. is surety for two-thirds of their amount—is not, like the first objection to them, based on the order of the signatures. If the second objection is sound, it is available when the partnership name is signed to the note first in order, for, if it be true that a firm, as one of the three makers of a joint note, is surety for the other two makers for two-thirds of the note, that condition would accompany the contract whether the partnership signed first or last. The singular result would follow that while the partnership note, signed with its name only, would be regular, exciting no suspicion and showing no infirmity, the same note, with other solvent names signed to it under the partnership signature, would become irregular and show on its face an infirmity giving notice to purchasers.

We are of opinion that the appellants are entitled to the protection afforded by the law to bona fide purchasers.

It is to be regretted that, in a case like this, a partner who has been guilty of no wrong may be subjected to loss by the wrongdoing of his copartners. But, when the question arises as to which of two innocent parties shall suffer, the loss should be made to fall upon the

one who has put it in the power of the guilty persons to perpetrate the fraud.

The court is of opinion that, on the record before us, the 12 notes are provable claims against the estate of the bankrupts.

The decree of the court of bankruptcy is therefore reversed, and the cause remanded.